## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

**ANGELA DEBOSE,**

      **Plaintiff,**

**v.**

**GREENBERG TRAURIG, P.A.,**
      **Richard Mccrea, in his individual capacity,**
      **Cayla Page, in her individual capacity,**
      **Gigi Carmona, in her individual capacity,**
**FLORIDA POLYTECHNIC UNIVERSITY**
**BOARD OF TRUSTEES,**
      **Randy Avent, in his official capacity,**
      **Terry Parker, in his official capacity,**
      **Mike Dieckmann, in his official capacity,**
      **Penelope Farley, in her official capacity,**
**UNIVERSITY OF SOUTH**
**FLORIDA BOARD OF TRUSTEES,**

      **Defendants.**

_____/

Case: 1:24−cv−00938
Assigned To : AliKhan, Loren L.
Assign. Date : 3/25/2024
Description: Employ. Discrim. (H−DECK)

**CASE NO. _____**

## COMPLAINT FOR EQUITABLE AND INJUNCTIVE
## RELIEF AND DAMAGES, AND DEMAND FOR JURY TRIAL

Plaintiff Angela DeBose ("Ms. DeBose"), individually, brings this action against the Defendants, Greenberg Traurig, P.A. ("GTLAW") and its employees/agents/assigns Richard McCrea ("Mccrea"), Cayla Page ("Page"), and Gigi CARCAMO ("CARCAMO"); Florida Polytechnic University Board of Trustees ("FPUBOT") and its employees/agents/assigns Randy Avent ("Avent"), Terry Parker ("Parker"), Mike Dieckmann ("Dieckmann"), and Penelope Farley

RECEIVED
MAR  25  2024
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

("Farley"); and the University of South Florida Board of Trustees ("USFBOT"), and alleges as follows:

## I. PARTIES

1.     The Plaintiff is a State of Florida resident in the City of Tampa, Hillsborough County, Florida.   Plaintiff was formerly an employee of the state government universities and agencies, Florida Polytechnic University ("FLPOLY") and its Board of Trustees ("FPUBOT") and University of South Florida ("USF") and its Board of Trustees ("USFBOT").

2.     Defendant University of South Florida Board of Trustees ("USFBOT") is the governing body of the University of South Florida ("USF"), and public body corporate created by Article IX, Section 7 of the Constitution of the State of Florida. Defendant USFBOT is based at 4202 E. Fowler Avenue, Tampa, Florida. Defendant USFBOT is a body corporate authorized to sue and be sued under the laws of the State of Florida on behalf of USF. USF is an "employer" in an "industry affecting commerce" as defined by federal and Florida law. USF is part of the State University System with its main campus in Hillsborough County, Florida. At all times material hereto, USF was and is a public university within the State University System of the State of Florida and a "state agency," pursuant to §216.011(1)(qq), Florida Statutes. USF, referred to as "the Plantation" in the Black community, has a history of institutional racism against  Black / African Americans in all phases of employment

and compensation.  As a result, USF has been sued in federal and state court at an alarming rate by faculty, staff, and students for Civil Rights violations.  Plaintiff was an employee of Defendant USFBOT and is an aggrieved person within the meaning of FCRA. Defendant USFBOT is an employer within the meaning of FCRA.

3.     Defendant Florida Polytechnic Board of Trustees ("FPUBOT") is the governing body of the Florida Polytechnic University ("FLPOLY"), and public body corporate created by Article IX, Section 7 of the Constitution of the State of Florida. Defendant FPUBOT is based at 4700 Research Way, Lakeland, Florida. Defendant FPUBOT is a body corporate authorized to sue and be sued under the laws of the State of Florida on behalf of FLPOLY. FLPOLY is an "employer" in an "industry affecting commerce" as defined by federal and Florida law. FLPOLY is part of the State University System with its main campus in Polk County, Florida. At all times material hereto, Plaintiff was an employee of Defendant FLPOLY, a public university within the State University System of the State of Florida and a "state agency" pursuant to §216.011(1)(qq), Florida Statutes. FLPOLY was established on April 20, 2012 and has developed a history of discrimination and retaliation. Plaintiff was an employee of Defendant FLPOLY and is an aggrieved person within the meaning of FCRA. Defendant FLPOLY is an employer within the meaning of FCRA.

4.    Defendant Greenberg Traurig, P.A. ("GTLAW") is a contractor performing legal services on behalf of USFBOT, with a location in Washington, DC at 2101 L Street, N.W., Suite 1000, Washington, D.C. 20037.  Defendant GTLAW is a resident of every state. In the course of litigation, Plaintiff discovered that GTLAW,  at all relevant times, a contractor of USFBOT, and during certain relevant times, also a contractor of FLPOLY, entered an agreement with FLPOLY on USFBOT's behalf to do something unlawful to harm DeBose, and one or both of them take action to carry out the plan.  GTLAW's nonexempt records are public under s. 119.0701, F.S.

5.    Defendant  RICHARD C. MCCREA, Jr. ("MCCREA"),  an employee of Greenberg Traurig, P.A. and resident of Hillsborough County.   In the course of litigation, Plaintiff discovered that McCrea,  at all relevant times, a contractor of USFBOT, and during certain relevant times, also a contractor of FLPOLY, entered an agreement with FLPOLY on USFBOT's behalf to do something unlawful or engage in a lawful act by unlawful means to harm DeBose, and one or more of them take action to carry out the plan.  McCrea's nonexempt records are public under s. 119.0701, F.S.

6.    Defendant CAYLA PAGE ("PAGE") is an employee of Greenberg Traurig, P.A. and a contractor/subcontractor of USFBOT.  In the course of litigation, Plaintiff discovered that Page,  at all relevant times, a contractor of USFBOT, and during certain relevant times, also a contractor of FLPOLY, entered an agreement with

FLPOLY on USFBOT's behalf to do something unlawful or engage in a lawful act by unlawful means to harm DeBose, and one or more of them take action to carry out the plan  Page's nonexempt records are public under s. 119.0701, F.S.

7.      Defendant GIGI CARCAMO ("CARCAMO") is an employee of Greenberg Traurig, P.A. and a contractor/subcontractor of USFBOT.  In the course of litigation, Plaintiff discovered that CARCAMO,  at all relevant times, a contractor of USFBOT, and during certain relevant times, also a contractor of FLPOLY, entered an agreement with FLPOLY on USFBOT's behalf to do something unlawful or engage in a lawful act by unlawful means to harm DeBose, and one or more of them take action to carry out the plan.  CARCAMO's nonexempt records are public under s. 119.0701, F.S.

## II.  JURISDICTION

8.      Plaintiff is a resident of Hillsborough County, Florida and was employed in Polk County, Florida.

9.      Defendant USFBOT is located in Hillsborough County, Florida but is alleged to have unlawfully conspired with FLPOLY, GTLAW, MCCREA, PAGE, CARCAMO, et al., to interfere with Ms. DeBose's employment in Polk County, Florida.

10.     Defendant FLPOLY is located in Polk County, Florida.

11.     Defendant GTLAW has locations in virtually every state, including Washington, D.C., and is alleged to have unlawfully agreed and conspired with USFBOT, FLPOLY, MCCREA, PAGE, CARCAMO, et al. to do something unlawful to harm Ms. DeBose in Polk County, Florida.

12.     Defendants MCCREA, PAGE, and CARCAMO are believed to be located in Hillsborough County, Florida but are alleged to have unlawfully agreed and conspired with USFBOT, FLPOLY, GTLAW, et al. to do something unlawful to harm Ms. DeBose in Polk County, Florida.

13.     This complaint is brought for diversity of citizenship and federal question jurisdiction action for unlawful employment practices, including race, gender, and age discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended ("Title VII"); intentional interference with a business relationship; civil conspiracy; and breach of contract under Florida law.  Plaintiff seeks equitable relief and damages including: declaratory relief and injunctive relief; reinstatement to employment, or in the alternative, front pay for lost compensation and retirement benefits; liquidated damages; compensatory damages; attorneys' fees, costs and expenses; and all other relief this Court deems just and proper.

14.     The general purposes of the Title VII is to secure for all individuals within the United States freedom from discrimination because of race, sex, age, and retaliation.

15.    This complaint is brought for retaliation in employment under the FCRA's anti-retaliation provisions making it unlawful for past, present, and prospective employers to punish employees for having engaged in statutorily protected activity.

16.    A Notice of Right to Sue letter ("RTSL") from the Equal Employment Opportunity Commission ("EEOC") has been obtained from FLPOLY and USFBOT.[1]

17.    This Court has jurisdiction over this action pursuant to the United States Constitution, Art. III, §2, Cl. 1; 28 U.S.C. §§1331, 1343, 2201 and 2202; 42 U.S.C. §2000e-5; 42 U.S.C. §12117; 29 U.S.C. §2617; and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

18.    Venue in Polk County is proper as the unlawful employment-related practices described herein occurred in both Polk and Hillsborough County, Florida and because a substantial part of the events giving rise to Plaintiff's claims occurred in both judicial districts and had a substantial effect on Ms. DeBose in these judicial districts.

## **INTRODUCTION**

19.    This is a sad and most shocking case of discrimination, retaliation, conspiracy, and interference. Angela DeBose, while working for Florida Polytechnic University, experienced racial, gender, and age discrimination in employment and retaliation for

---

[1] The right to sue letter for USFBOT was timely exercised in a pending state case in Florida.

the exercise of her civil and constitutional rights in a manner that most Americans would have believed unthinkable in the third millennium or the third decade (i.e., the 20s) of the 21st Century.

20.     The University of South Florida, now among the Highest Research Activity (R1) Universities by the Carnegie Classification of Institutions of Higher Education, was the first public university in Florida to be invited to join the AAU in nearly 40 years and is now one of only two institutions from the State University System of Florida to serve as an AAU member.  The achievements are a mystery since the institution has been run like an antebellum Plantation, subjecting the American Descendants of Slavery ("ADOS") to unlawful  employment practices  in the vein of "Jim Crow," including doggedly pursuing and retaliating against former employees as though they were runaways or fugitives meriting the cruelest penalties or punishments.

21.     USFBOT contractors GTLAW, MCCREA, PAGE, and CARCAMO entered a conspiratorial agreement with FLPOLY, Ms. DeBose's employer, that was only recently discovered by the Plaintiff, to discriminate, retaliate, and deploy other methods to do something unlawful or engage in a lawful act by unlawful means to harm Ms. DeBose, including but not limited to ousting her from her job.

22.     Ms. DeBose, the first and only black /African American University Registrar in USF's history.  As a black/African American Department Head at FLPOLY, Ms.

DeBose was mocked, threatened, demeaned, demoted, punished, falsely accused of misconduct, ostracized, and humiliated at FLPOLY under this unlawful agreement by FLPOLY and GTLAW, MCCREA, PAGE, and CARCAMO, on behalf of USFBOT, because of her race-gender, age, and protected activity.

23.    The agreement was paid for using State funds.  When Ms. DeBose discovered the contract, she was denied access to nonexempt public records.  When Ms. DeBose filed a Whistleblower Complaint, reporting the use of state funds to carry out a discriminatory, retaliatory intent/purpose, FLPOLY retaliated against her because of her race-gender, age, and protected activity. FLPOLY dismissed Ms. DeBose's complaint without conducting an investigation.

24.    Ultimately, Ms. DeBose had to request part-time leave under FMLA because of the stress from the obvious retaliation for filing internal complaints at FLPOLY with its Employee Relations/Human Resources unit and the United States Equal Employment Opportunity Commission ("EEOC"). Ms. DeBose resumed full-time work remotely in order to continue her employment or remain employed away from the hostile, retaliatory work environment that existed, even though the terms of her employment had been detrimentally altered.  As a Senior Director or Department Head, Ms. DeBose led a department of four staff.  The University President, Randy Avent ("Avent"), University Provost, Terry Parker ("Parker"), Controller Penelope Farley ("Farley"), and CIO/VPIT Mike Dieckmann ("Dieckmann") ostracized and

harassed  Ms. DeBose and attempted to discredit her to her entire department. As vacancies occurred in the polarized environment, AVENT, PARKER, FARLEY, and DIECKMANN conspired together against Ms. DeBose, defunding her department, not allowing her to fill vacant positions, and requiring her to work alone in providing primary support for FLPOLY's Workday® Enterprise Resource Planning ("ERP") or business management system.

25.    Legal intervention is vitally necessary to make clear that the blatant disregard of federal and state law; civil, constitutional, and statutory rights; etc. will not be tolerated.

26.    The degradation, marginalization, humiliation, discrimination, and retaliation of blacks/African Americans based on race in the terms and conditions of employment should have ceased long ago and should not be tolerated in any workplace in America.  The use of racial slurs, mockery, and epithets—and its variants of other hate speech in the workplace should not be excused or protected by employers, police or government agencies, or the courts. Ms. DeBose has experienced overwhelming unlawful conduct of this character because of the unlawful agreement formed among USFBOT, GTLAW, MCCREA, PAGE, CARCAMO, and FLPOLY during her employment at FLPOLY, often on a daily basis.

27.   Ms. DeBose was  subjected to other forms of hostile work environment harassment and discrimination on account of her race-gender, age, and protected activity.  A dead lizard was strategically placed on the keyboard on her desk when she returned to work onsite. Penelope Farley and Mike Dieckmann engaged in coworker harassment against Ms. DeBose, attempting to sabotage her work. President AVENT and Provost PARKER knew of the unlawful racially discriminatory, retaliatory acts but did nothing to stop them or discipline the offenders because their conduct was in alignment and agreement with the contract among FLPOLY, GTLAW, MCCREA, PAGE, and CARCAMO and/or on behalf of USFBOT.

28.   Because Ms. DeBose complained and on account of her race-gender and age, FLPOLY refused to allow Ms. DeBose to extend her retirement an additional three (3) years as accorded by the Florida Legislature, increasing her interest rate on her retirement accumulations from 1.3 to 4 percent.  However, FLPOLY extended the retirement date of a white male counterpart.  By refusing to extend Ms. DeBose's retirement date, FLPOLY essentially terminated Ms. DeBose on account of her race-gender and age and retaliated against her because she engaged in protected activity.

29.   Ms. DeBose was technically demoted, without cause.  Her duties were restricted. Under a forced reorganization, her reporting line changed to Provost PARKER and subsequently her peer, CIO DIECKMANN.  When Ms. DeBose

complained about having to report to a co-worker who harassed her and a peer, DIECKMANN received a de facto promotion without a search to VP of Information Technologies, taking over Ms. DeBose's department, budget, and vacant positions. DIECKMANN marginalized Ms. DeBose.  He sought to interfere with her request for FMLA and prevent her use of leave.

30.   DIECKMANN removed Ms. DeBose from Workday meetings where her attendance was usual or expected on account of her race-gender, age, and protected activities.  Ms. DeBose was blackballed from supporting the Workday platform for Finance & Accounting—an integral part of her job—by DIECKMANN and FARLEY.

31.   Ms. DeBose had high performance ratings and received glowing reviews and laudatory letters of recommendation from her supervisor who served in the position of CFO and VP of Finance and Administration.  In a forced reorganization under Provost PARKER, Ms. DeBose was suddenly average or meets expectations and needing improvement in the area of collaboration.  The Plaintiff recognized these stated reasons as obvious pretexts for racial hostility and retaliation from USFBOT's playbook. It seemed surreal until Ms. DeBose discovered the contract between FLPOLY, GTLAW, MCCREA, and CARCAMO on behalf of USFBOT.

32.   The retaliation against Ms. DeBose also caught up potential witnesses or plaintiffs.  The terms and conditions of Regina Siewert's employment changed

because of her association with Ms. DeBose.  Regina Siewert, a Hispanic female, was not retained and her retirement date was also not extended, although a white male's date was extended. For supporting Ms. DeBose, Regina Siewert and others experienced repeated acts of retaliation from AVENT, PARKER, DIECKMANN, and FARLEY, including having their pay restricted through policies that may appear facially neutral and broadly applicable but, upon scrutiny, are clearly targeted at Ms. DeBose.

33.   Plaintiff sues just some of the individuals and entities responsible for this unchecked pattern and practice of virulent racial discrimination and retaliation against her. Officers, elected officials, law-enforcement agencies, and governmental entities have condoned or failed to stop this behavior by USFBOT, FLPOLY, GTLAW, MCCREA, et al.; they have orchestrated and participated in this retaliation against Ms. DeBose because she sought a legal remedy through other protected activity (i.e., the courts) to eradicate the racially hostile work environment, discrimination, and retaliation to which she was subjected.

34.   The claims are administratively exhausted and become ripe for suit, with the EEOC issuing a RTSL.

35.   The damages here are significant. Plaintiff has suffered psychological harm directly attributable to her mistreatment. Plaintiff damages as well as injunctive

relief from USFBOT's, GTLAW's, and MCCREA's, et al. interference, and such other relief as this Court deems just and proper. Plaintiff demands a trial by jury.


GENERAL ALLEGATIONS

36.     Angela DeBose worked at FLPOLY from July 2015 to August 31, 2023.  Ms. DeBose started as a consultant/independent contractor on a project concerning FLPOLY's legacy student system, Three Rivers CAMS.

37.     From October 2015 to February 2016, Ms. DeBose was an OPS salaried employee at $100,000.00 annually, employee without paid-time-off benefits.

38.     In February 2016, Ms. DeBose accepted a permanent position as Associate Director, Business Systems management, through June 2017 when she was hired as a Senior Director or Department Head responsible for FLPOLY's Workday ERP. Ms. DeBose named her department Enterprise Systems.   She achieved high performance ratings and was on track to become an AVP.

39.     USF, GTLAW, and MCCREA made inquiries to FLPOLY about Ms. DeBose.  In 2016, on behalf of USF, MCCREA and GTLAW asked the reason Ms. DeBose provided on her job application for leaving USF, giving the inference that Ms. DeBose may have lied or falsified her application. This question was retaliatory and not related to any court proceedings.  It was raised around the time that FLPOLY

offered and Ms. DeBose accepted the position.  It was an adverse action but was rebuffed because Ms. DeBose answered truthfully in her application and in her interviews.

40.    In December 2018, USF, MCCREA, and GTLAW solicited information from FLPOLY about Ms. DeBose's pay.  MCCREA on behalf of USF and GTLAW, presented false information to a federal magistrate about Ms. DeBose's pay at FLPOLY, in retaliation against Ms. DeBose as the verdict winner in her Title VII discrimination and retaliation case, asking that Ms. DeBose not be awarded front pay.  Ms. DeBose was not aware of any other communications but suspected USF when her employment at FLPOLY began to dramatically change.  By way of example:

a.    Sometime around May 2020, the CIO became vacant at FLPOLY following the resignation of the incumbent.  Mark Mroczkowski requested to promote Ms. DeBose to an AVP position and increase her pay.  Mark also considered adding Information Technologies to Ms. DeBose's portfolio, having her lead it and Enterprise Systems.  Randy Avent and Terry Parker informed Mark Mroczkowski, who ran the IT department following resignation of the CIO, that they wanted a man for the position and to tell Angela DeBose not to apply. This was reinforced when Angela DeBose received an email appointing her to the Search Committee.

b.      On August 5, 2020, Mark Mroczkowski sent Angela DeBose an email with a Subject line, "Are you in DROP?"  Ms. DeBose learned that her status had been discussed at a President's cabinet meeting in connection with the request made by her supervisor for Ms. DeBose to receive a promotion to an AVP title and a pay increase.  Because he had made the request multiple times, he requested that the Chief of Police, a white male, also be promoted along with Ms. DeBose—stating this approach to also promote a white male might "inspire Randy".

c.      On August 21, 2020, Randy Avent stated that an AVP title was inconsistent with Ms. DeBose's status. Randy Avent stated that Ms. DeBose should first be a leader of a department or department head like the others. Mark Mroczkowski informed Randy Avent that Ms. DeBose was already a department head and performed exemplary in the role.  Randy Avent rejected the title change and pay increase because of Ms. DeBose's age and future plans to retire.[2]

d.      In November 2020, Randy Avent and Terry Parker decided to stop the Workday Student implementation project which Ms. DeBose led, commission

---

[2] At USF, DROP was raised as an issue because Ms. DeBose completed 30 years of service at age 55.  This allowed her to defer DROP and elect to begin participation at any time between completing 30 years and reaching age 57. Ms. DeBose lost this benefit because of her per se retaliatory termination from USF. Ms. DeBose was in the Investment Plan at FLPOLY.  However, FLPOLY stated to Ms. DeBose that she was in the FRS Pension Plan to prevent her from being paid out her retirement in a lump sum.

the Tambellini Group ("Tambellini") to review the Workday Platform at FLPOLY, and potentially recommend a business and student system replacement.

e.    In December 2020, Alicia Maule resigned from FLPOLY expressing that, "*Three years is too long to wait that long for Angela to retire.*"

f.    On December 22, 2020, Penney Farley requested Ms. DeBose hire Alicia Maule back on a contractual basis so that she could "*maintain a lifeline to her*".

g.    Penney Farley complained and made false accusations to Randy Avent and Terry Parker that "*Angela did not do enough to keep Alicia Maule and may have been the reason Alicia left.*"[3]

h.    Randy Avent subsequently sent Ms. DeBose emails in which he complained about the use of consultants, alleging that someone of Alicia Maule's caliber would be able to manage Workday without consultants.

i.    Randy Avent suggested or inferred in the emails that Ms. DeBose was suddenly not qualified and that Alicia Maule was suddenly better qualified, not having any direct knowledge of Alicia's knowledge, skills, abilities.

---

[3] USF made a similar allegation involving a white female employee, Caurie Waddell.

j.      Upon learning of the ways that Penney Farley undermined and harassed Ms. DeBose, Randy Avent stated to Ms. DeBose when they met in person, "*What Penney wants, Penney gets.*"

k.      Penney Farley continued to meet with Alicia Maule on a regular basis in 2021 after her employment ended with FLPOLY, while Alicia Maule was employed by CrossVue, without a contract to book the hours.

l.      In January 2021, Alicia Maule asked Ms. DeBose to consider CrossVue for FLPOLY Workday projects.   Ms. DeBose met with Alicia Maule, Penney Farley, and CrossVue representative, Andali Booysen, on February 8, 2021. CrossVue asked for a sole source, exclusive contract as FLPOLY's engagement partner for Workday, replacing not only other vendors but the Enterprise Systems department.

m.      Ms. DeBose declined to use CrossVue because it had no prior higher education experience and charged a higher rate than FLPOLY's existing Workday engagement partners.

n.      Randy Avent, Terry Parker, Mike Dieckmann, and Penney Farley instigated an effort to outsource 50% or more of Ms. DeBose's work in order to meet Alicia Maule's demand to work 100% remote  for FLPOLY, but through CrossVue, by assigning them a contract. There was no discussion

with Ms. DeBose and every effort was made to marginalize her after reversing/overriding her decision.

o.    In a quid pro quo arrangement, the Penney Farley established a Workday support contract with CrossVue on the condition that as a new consultant, Alicia Maule would lead or be involved in every project and that Penney Farley would be the contract/project manager, not Angela DeBose, undermining Ms. DeBose's leadership role as the head of Enterprise Systems, and primary responsibility for Workday.

p.    Because CrossVue charged a higher rate, Penney Farley and Mike Dieckmann manipulated the procurement process, asking another vendor EdgeRock to change its terms to an amount that came in slightly higher than CrossVue.  Laura Marrone in Procurement manipulated the process so that CrossVue could be awarded the contract.  When the process was questioned by Ms. DeBose, Laura Marrone became belligerent and stated the contract was "*perfectly procured*."  To prevent displaced EdgeRock from lodging a complaint, Mike Dieckmann promised to utilize EdgeRock short-term on another contract.  A short time after the deal with CrossVue was set, FLPOLY terminated the contract/relationship with EdgeRock.

q.    The Provost informed DeBose that FLPOLY would not be implementing Workday Student, the system recommended by the Tambellini

Group and Plante Moran. Sometime after this decision, Randy Avent and Terry Parker had Tambellini reword  its final report to be less conclusive so that it would result in fewer questions from FLPOLY's Board and the Florida Board of Governors.

r.      In March 2021, Gina Delulio formed a team of white female department heads who voted to have Ms. DeBose, the only black female department head, and her team move out of its offices to substantially smaller drab offices with less privacy, more noise, and a greater walking distance because allegedly Procurement wanted the space.  Ms. DeBose was not invited to the prior meetings but was instead asked to attend the meeting where the change was announced.

s.      The department head of Procurement, Treasa Mclean, stated that she did not request nor want the spaces but stated she had been demoted, her pay was decreased, and she was being forced to resign or retire.  Ms. Mclean warned Ms. DeBose that Mike Dieckmann asked to see "*all contracts managed by Angela*."  Ms. Mclean said she was "*told*" (emphasis added) to comply with Mike Dieckmann's request.

t.      In April 2021, the FLPOLY Provost Terry Parker commanded Ms. DeBose to send out a survey to a select group of employees that he identified

to ask them about their "*pain points*"[4] with Workday and/or Workday Support. Unknown by Ms. DeBose at the time, the group identified by Parker from whom to solicit criticism, had secretly convened. Penney Farley alleged that the report she wrote was for "*everyone.*" Penney Farley stated that DeBose and/or Enterprise Systems staff could not provide the support needed with Workday Financials following the resignation of Alicia Maule.  Alicia Maule, a white female and subordinate of Ms. DeBose, had only some end-user experience with Workday through her former employer, St. Leo University,  and had a CPA license.  Additionally, Alicia Maule made a poor showing on an Assessment used by HR in the hiring process. At the urging of others,  Ms. DeBose proceeded with hiring Alicia Maule, who had to be extensively trained at FLPOLY by Ms. DeBose.

u.      In June 2021, at Randy Avent, Terry Parker, and Mike Dieckmann's directives, FLPOLY terminated other contracts that Ms. DeBose managed (e.g., Workday Student, Workday Training, Huron). The Provost demanded that the Workday implementation tenants be deleted and not archived by Workday—as insurance that FLPOLY would not reconsider Workday Student or Ms. DeBose's leadership role over the project.

---

[4] Though "pain points" is terminology used in business, it was used by USF as pretext for the Ellucian visit and report.

v.     In July 2021, the President took away the training budget in Enterprise Systems. The budget was dramatically reduced or defunded initially by 50% but subsequently the budget and cost center was overtaken altogether by Terry Parker and then by Mike Dieckmann.

w.     In October 2021, the Provost directed that certain actions be taken to further reduce Enterprise Systems staff, demanding that Ms. DeBose terminate the employment of James Xin, Asian male, without cause.  The Provost asserted that James Xin did not have any sort of employment arrangement with FLPOLY and thus was suddenly a security risk.  Ms. DeBose produced documentation to show that James Xin's present position was approved/funded by her supervisor and former CFO, Mark Mroczkowski. The Provost nevertheless demanded James Xin's termination.

x.     Alicia Maule detested James Xin because he was highly intelligent, capable and *Asian*. Penney Farley and Mike Dieckmann urged others to support their contention that his contingent worker status posed a security risk. Ms. DeBose pointed out that the reason for the decision was mere pretext, given that the interim AVP/HR, Marsha Leap, a white female, and several other white workers were also on a contingent worker contract.  The Provost demanded immediate termination and stated the vacancy would not be filled.

y.     On October 11, 2021, Ms. DeBose filed a grievance with Regina Brown, Human Relations, which was reorganized temporarily under the General Counsel.  The General Counsel rejected the grievance the very next day on October 12, 2021, alleging it was insufficient.

z.     On February 10, 2022, Penney Farley attempted to hijack Ms. DeBose's  project to configure a new payroll bank account.  The setup was in development and then test and was moved to production for first time use in January 2022. After the first successful run, CrossVue's Alicia Maule changed the bank account information in production, without notice to anyone.   Neither Alicia Maule nor any other CrossVue consultant was involved in the testing and deployment of the new bank account configuration. Penney Farley exclaimed "*what a mess*" when problems surfaced as a result of the change but at no time informed Ms. DeBose that she solicited Alicia Maule to make that change, which impacted the payroll checks and settlement runs.  Jobs were canceled and Ms. DeBose had to reconfigure the system back to its prior state.  It was not until Ms. DeBose produced the audit trail that Penney Farley admitted that she had Alicia Maule make the change.

aa.     The Provost declined Ms. DeBose's request to require greater transparency from CrossVue and to have them follow the change control and management process Ms. DeBose established through the Workday

Operations Team (a.k.a. WOT).  The Provost declined Ms. DeBose's request to decommission Alicia Maule's access.

bb.     On February 15, 2022, Ms. DeBose updated her grievance with Regina Brown, Human Relations, who initially insisted the grievance had been closed but accepted the documentation.

cc.     The Provost asked Ms. DeBose to develop a proposed governance structure for the Student Information System.  When Ms. DeBose did so, the Provost used the information to have Mike Dieckmann set up similar governance structures to eliminate/replace the Workday Steering Committee and WOT, the Change Advisory Board established at implementation.  Mike Dieckmann established USEC and UCOORD with redundant membership to the Workday Steering Committee and WOT.   Mike Dieckmann subsequently attempted to fold WOT into UCOORD.  Mike Dieckmann set out to establish himself as the leader of the Workday Change Management Process and have Ms. DeBose function in a role in all respects subordinate to him.

dd.     On February 28, 2022, the Provost asked Ms. DeBose and the Registrar, Andrew Konapelsky, to review his construct for management of FLPOLY's major IT systems to justify the elimination of WOT and Ms. DeBose's leadership role as its chairperson.

ee.     On March 1, 2022, Ms. DeBose stated in writing to the Provost that the governance structure for HCM/Finance should await the onboarding of the VPFA/CFO since the primary process owners and managers of the business systems report to that position and because VPFA/CFO will likely be an integral participant/member of USEC. Ms. DeBose also informed the Provost that his proposed construct was decidedly biased in having one permanent chair for the SIS (i.e., the Registrar) while proposing a revolving chair for Workday, with Penney Farley identified as Ms. DeBose's immediate replacement.  This came on the heels of Ms. DeBose's updated grievance and data request.

ff.     Terry Parker also retaliated and reorganized Ms. DeBose under him and then demoted her under Mike Dieckmann—not the VPAF/CFO as Ms. DeBose had been told multiple times by Randy Avent.

gg.     On July 27, 2022, Lisette Brigham resigned her position as a Business Analyst in which she was paid approximately $80,000.00 annually.   The Provost who declined Ms. DeBose's requests for a pay increase for Lisette Brigham suddenly approved a plan by Mike Dieckmann to match and/or exceed Lisette Brigham's offer—which exceeded Ms. DeBose's annual salary, Penney Farley's, and Mike Dieckmann's salary at that time.   Ms. DeBose trained Lisette Brigham and subsequently approved her for

specialized training to gain Workday Pro Certifications in HCM and Recruiting. The Provost and Mike Dieckmann refused to allow Ms. DeBose to fill the vacant position but rather made it such that Ms. DeBose had to manage the Workday ERP platform alone, with Lisette Brigham rebuffing their offers.

41.  Sometime around July or August 2022, Ms. DeBose discovered that USF and its representatives exchanged many communications about or concerning her to FLPOLY allegedly to pressure FLPOLY into terminating her employment, in retaliation for the litigation Ms. DeBose filed against them related to her protected activities and to deprive her of an income.

42.  Sometime prior to July 22, 2022, Terry Parker, Mike Dieckmann, Penney Farley, and Alicia Maule attempted to set Ms. DeBose up for a written reprimand or terminable offense at a CrossVue meeting. Eamon Wong, CrossVue consultant, attended the meeting with Alicia Maule to validate her "planned" accusation that Ms. DeBose behaved in an uncollaborative manner. On July 22, 2022, Regina Brown, Employee Relations, asked Ms. DeBose to meet to answer questions about the meeting. The Provost who was several weeks late evaluating Ms. DeBose's performance gave her a low rating in the area of collaboration and a low or marginal increase. The meeting occurred weeks after the evaluation period and deadline for performance reviews. The Provost delayed evaluating Ms. DeBose's performance

until after this meeting to justify using an alleged event that occurred not in the evaluation period but technically in the next year or future evaluation period. It was a setup and Ms. DeBose did not behave in the manner alleged.

43. On August 5, 2022, Ms. DeBose requested leave under FMLA with accommodation to work less than a 40-hour week and work remotely to avoid the stress from the hostile work environment at work. Co-workers avoided Ms. DeBose, learning that she was on Randy Avent's and Terry Parker's hit list. A very dead dried-up lizard was strategically placed in Ms. DeBose's office on the keyboard on her desk, though her office was regularly or routinely cleaned.

44. Penney Farley and Mike Dieckmann used CrossVue's implementer access to make changes in Workday without notice or adherence to FLPOLY's change migration process developed by Ms. DeBose. This caused consequences and disruptions that Ms. DeBose had to clear up. Security monitoring, without specialized software, became impossible.

45. Mike Dieckmann sought to block Ms. DeBose's FMLA; however, HR informed him that he could not do so.

46. On August 23, 2022, Ms. DeBose filed a complaint against the University of South Florida for post-employment retaliation against her in her subsequent employment at Florida Polytechnic University ("FLPOLY") with the EEOC. Under

Florida's discovery and due diligence rule, Ms. DeBose's discovery about the emails was unreasonably delayed.

47.    On August 24, 2022, Ms. DeBose made a public records request for emails from her employer FLPOLY that covered the period from "2015 to the present" after discovering that many communications were made about her to FLPOLY by USF and its representatives. Ms. DeBose also requested the emails from USF.

48.    On September 8, 2022, the EEOC issued a RTSL.  Ms. DeBose filed internal grievances and/or charges of discrimination, retaliation, and hostile work environment harassment with FLPOLY Employee Relations/Human Resources and Victims Advocacy because FLPOLY did not have a Diversity Inclusion Equal Opportunity office or mini-eeoc function like other SUS higher education institutions in Florida.

49.    On September 12, 2022, Sherri Pavlik, FLPOLY General Counsel's Office reported the results of a total of  2,725 records. Pavlik emailed an invoice for $45,946.01. Thereafter, David Fugett, FLPOLY's General Counsel requested that Ms. DeBose meet with him and another attorney, Alex Landback, on October 24, 2022, during work hours, about her public records request for documents.  Ms. DeBose accepted the meeting but asked to have it recorded. Fugett stated the meeting would not be recorded but agreed to a virtual meeting.

50.     On October 24, 2022, the lawyers came unexpectedly to Ms. DeBose's office. Subsequently, they tried to set up a videoconference call.  Mr. Fugett stated the emails would not be provided and urged Ms. DeBose to back away from pursuing the documents.

51.     On October 26, 2022, a subpoena duces tecum was served on David Fugett, General Counsel, Florida Polytechnic University, for the production of the 2,725 records returned from Ms. DeBose's search criteria.   Ms. Pavlik's email was attached to the subpoena to clearly describe the records and to show that the requested records exist.  However, no response came from Fugett until November 11, 2022.  Fugett emailed Ms. DeBose at her personal email account and stated the subpoena was served on him but he would not be responding.

52.     Sometime in November 2022, Ms. DeBose filed a Police Report with the Lakeland Police Department and State Attorney's Office for the Tenth Judicial Circuit.   The LPD and SAO assigned Case No. 2022-00085303 to conduct an investigation, which allegedly corresponds or links to the case number assigned by FLPOLY. In responding to the university police, Fugett and the FLPOLY General Counsel's Office stated the subpoena was no longer in force because the federal district court had dismissed Ms. DeBose's case.

53.    On December 7, 2022, Ms. DeBose filed suit against USF in order to meet the RTSL deadline and to seek the emails exchanged among USF,  GTLAW, and MCCREA, et al., through discovery.

54.    USF refused to provide the emails in response to Ms. DeBose's first and second production requests.  USF refused to provide responses to Ms. DeBose's public record requests.

55.    On March 7, 2023, MCCREA/GTLAW asserted the emails were privileged and alleged for the first time that MCCREA/GTLAW represented FLPOLY and had a contract with FLPOLY to represent it in employment matters about or concerning Ms. DeBose. FLPOLY, which holds the privilege, did not object but also did not comply. Ms. DeBose had been told by employees at FLPOLY that FLPOLY was pressured by USF and its representatives to terminate Ms. DeBose.

56.    MCCREA disclosed that FLPOLY was a willing participant and may have acted on its own initiative.

57.    On April 11, 2022, Ms. DeBose made a public records request for the contracts that USF's legal representatives claim to have made with FLPOLY.  Ms. DeBose requested the contract documents from FLPOLY's General Counsel. Initially,  the person responding to ogc@floridapoly.edu sought to unlawfully impose a charge for the contracts.  When Ms. DeBose objected, the original contract and an Amendment were provided.  However, none of the underlying documents to

show the scope of the contracts or work orders were provided.  FLPOLY's General Counsel's office stated no additional documents would be provided.

58.    In the months of July and August 2023, FLPOLY hired/promoted 4-6 new workers to support Workday after Ms. DeBose's retirement, all the while having her work alone or with a significantly reduced staff. None of the new employees handled Workday tickets/projects to Ms. DeBose's knowledge.  It appeared that they were set to start when Ms. DeBose was out.

59.    On September 8, 2023, FLPOLY was subpoenaed again to produce the emails and also the underlying documents that comprised the contracts and agreements by and between Florida Polytechnic, Greenberg Traurig, P.A., and Richard McCrea that were requested by Ms. DeBose.  FLPOLY's production was due by 10:00 a.m. on September 18, 2023.  FLPOLY had the option to email or appear at the location designated on the subpoena to provide the documents.

60.    On September 18, 2023, Ms. DeBose contacted Mr. Fugett by email when FLPOLY failed to take either action.  Mr. Fugett responded at 10:27 a.m. on 9/18/2023 that FLPOLY would provide the information via email that day. However, the files were subsequently copied to a flash drive and delivered via Fedex on September 22, 2023.

61.    On September 29, 2023, Ms. DeBose informed Mr. Fugett the production of the emails was deficient.  Ms. DeBose requested the emails to the "present" time.

The Court determined present to mean through the last subpoena date of September 8, 2023.

62.    Because the files did not appear to match the search criteria, Ms. DeBose requested copies of the scripts used to extract the records for the files.  However, FLPOLY failed to produce the additional emails or the scripts.

63.    The emails stopped in 2022.  Ms. DeBose suspects spoliation.

### SUMMARY OF ADVERSE ACTIONS

Promotion/Pay

64.    Ms. DeBose, Enterprise Systems Director, a black female; Controller,  a white female; HR Director, a white female; Procurement Director, a white male replaced by white female; Facilities Director, a white male; IT Director, a white male; and Police Chief, a white male, were direct reports to the Chief Financial Officer ("CFO").  Ms. DeBose became the only black department head and was treated differently than her similarly situated comparators of department heads.  Similarly situated refers to one class of persons being alike in all relevant ways to another class for purposes of a particular decision or issue.

65.    To establish a prima facie case of disparate treatment under Title VII, a plaintiff must show "(1) she is a member of a protected class; (2) she was qualified for her position/title; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more

favorably." Ms. DeBose, a black female, is a member of a protected class; is strongly qualified for her position/title with vast work experience and education; Ms. DeBose experienced an adverse employment action when FLPOLY failed to approve a change in title to AVP of Enterprise Systems and an equitable salary increases on more than one occasion; and similarly situated individuals (Controller, Human Resources, Procurement, and Facilities) outside her protected class were treated more favorably in having a title change to AVP and pay increases.

66.    When Ms. DeBose complained to President Randy Avent and pointed out that she was better qualified than her comparators, the University leadership set out to eliminate Ms. DeBose's comparators with lesser qualifications.

67.    Historically, FLPOLY (General Counsel, Gina Delulio) went after the black male Controller, who subsequently resigned, accepting another position. A white female was hired to the position of AVP/ Controller.

68.    FLPOLY demoted the AVP/Procurement & Auxiliaries director in title and compensation, forcing her to retire/resign or face termination.

69.    FLPOLY created a new AVP/CIO position, having the interim IT Director report to the CIO position and the AVP/CIO instead report to the CFO.

70.    Ms. DeBose's white counterparts were paid $150K and above while she was paid $124K.  Ms. DeBose was equally or better qualified than her white female and male counterparts.

71.   When Ms. DeBose pointed out the disparate treatment that existed in title, promotion, pay, and compensation, and benefits, the President and Provost "solved the problem" by promoting Ms. DeBose's white male counterpart, Mike Dieckmann, from CIO/AVP to  CIO/VPIT.  Prior to the VPIT promotion, Ms. DeBose reported the hostile work environment harassment to Employee Relations and filed a grievance.  The grievance was immediately declined and failed to be investigated.

72.   Ms. DeBose was slated to report to report to the new CFO and VP of Administration and Finance ("VPAF").

73.   After the reorganization and the change moving Ms. DeBose/Enterprise Systems under the CIO/VPIT, it was the Provost that evaluated Ms. DeBose's performance and dropped it from Excellent/Superior by the former CFO to a Meets Expectation rating.  The Provost also gave Ms. DeBose a low or marginal increase because of the lower rating he gave Ms. DeBose in her performance evaluation, to justify the  low increase.

74.   The Provost asked the VPIT to remove Ms. DeBose from a University technology coordinating committee that the Provost used Ms. DeBose to establish. The Provost stated as his reason that he "did not feel free to speak" with Ms. DeBose in attendance, disregarding Florida's Sunshine Laws.

75.    The Provost defunded Ms. DeBose's department, Enterprise Systems, by more than 50% and would not allow Ms. DeBose to fill vacant positions, though funding was not a concern.

76.    Ms. DeBose was forced to work alone, expected to do the work of four, but with no additional remuneration.

77.    The Provost and VPIT attempted to block Ms. DeBose's use of her PTO before the end of the year, under unfavorable working conditions—(185 hours of use-it-or-lose-it paid time off that would not rollover).  Subsequently, the VPIT, Mike Dieckmann, attempted to block Ms. DeBose's use of FMLA until informed by HR that he could not cross that line.

78.    The VPIT, Controller, and Provost utilized consultants with Cross Country/CrossVue to make changes in the Workday system to undermine, interfere, and/or sabotage Ms. DeBose's work.

79.    The VPIT lowered the job requirements for a Project Manager position to not require any degree.  After hiring white female, Laura Marrone, planned to be let go from procurement to the Project Manager role, the VPIT added the requirements back, stating the pool was "poor".  The VPIT had no consequence from rigging the search and hire of unqualified white female, Laura Marrone, to replace Ms. DeBose.

80.    After 2 or 3 months in the Project manager role, the VPIT promoted the Project Manager, Laura Marrone, to Director of a new well-funded and well-staffed

department named "Enterprise Solutions".  Mike Dieckmann demanded that Laura Marrone be made a Workday Named Support Contact ("NSC") like Ms. DeBose, though she had no training.   The VPIT increased the Project Manager-turned-Director's salary significantly.[5]

81.   The VPIT informed Ms. DeBose that she could not be compensated for working alone without a team, unless her request was made in writing. When Ms. DeBose made the request in writing, it was denied without explanation.

82.   Ms. DeBose's enrollment in DROP and her age was disclosed and used as a weapon against her to prevent her from being promoted and receiving a salary equity and/or market rate adjustment.  Ms. DeBose's status was used to imply that she was not competent and being "fired from her job".  To stop the false narratives by FLPOLY's leadership, Ms. DeBose openly disclosed her plan to retire to WOT.

83.   FLPOLY wasted $2 million dollars to move away from Workday Student to Ellucian's Banner Student system, thinking it would be an afront to Ms. DeBose because she filed a lawsuit against Ellucian.  The Provost lied to that his decision to stop the Workday Student implementation saved FLPOLY $12 million when the fact is that Phase I of the Workday Student implementation was 95% completed when the Provost made the costly decision to pull the plug.  The budget allocated to finish

---

[5] Though Mike Dieckmann initiated a promotion and raise for Laura Marrone, it was not allowed to move forward but only after Plaintiff's amended complaint was filed.

Phase II of the Workday Student implementation was swept. The work completed in Phase I was deleted because the Provost declined to pay $5,000.00 annually to store the information until the implementation project could be restarted.   The Provost urged FLPOLY to consider abandoning the Workday system altogether, for HCM, Financials, Payroll, and Budget Planning in Adaptive because it was "poorly implemented".   A significant percentage of employees satisfied with Workday left FLPOLY at the prospect of undergoing another major system implementation to outdated technology.

Demotion/Reorganization

84.     FLPOLY sought to unjustifiably have Ms. DeBose report to the CIO, a peer and fellow department head on the organizational chart.  Ms. DeBose was the only department head that was proposed to be moved under a peer.

85.     When Ms. DeBose questioned the change, President Avent attempted to suggest that Ms. DeBose's position was not similar to the other department head positions but was similar to the Chief of Police in having no comparators. However, Ms. DeBose pointed out that finding that potential comparators are not similarly situated because of relatively minor, or irrelevant, distinctions would not prevent a potential discrimination complaint and that a prima facie case could be articulated based on the circumstances.

86.     At a December 6, 2022 meeting with DIECKMANN, Ms. DeBose requested

to be compensated for the additional duties volumetric duties she was performing

for FPU without any staff support.  In retaliation and for non-budgetary reasons, Ms.

DeBose worked alone.   FLPOLY elected to leave the vacant positions in Ms.

DeBose's department unfilled.  DIECKMANN feigned that he wanted to receive job

applications and communicate with candidates via LinkedIn.  Ms. DeBose activated

the Workday feature in a test environment pursuant to a request from HR.

DIECKMANN requested that Ms. DeBose establish a LinkedIn profile so that she

could use the feature to hire staff for her vacant positions.  After Ms. DeBose did so,

DIECKMANN sent multiple requests to be added as a "friend" to Ms. DeBose's

profile, as a potential litigation strategy.  Because of his co-worker harassment as a

peer and the adverse actions he took against her as a direct report, Ms. DeBose was

reluctant and distressed about adding him to the social media profile but under

immense pressure, added DIECKMANN and Laura Maronne.

87.     Months later on June 8, 2023, DIECKMANN requested justification for the

request for additional compensation in writing, although previously provided.

88.     On July 12, 2023, I responded to DIECKMANN and provided multiple

examples via email of the additional work that Ms. DeBose was performing that was

previously handled by a staff of four.  The Plaintiff's reasons for a one-time bonus

was soundly justified and documented. However, in retaliation, DIECKMANN

decided to use the salary savings from the vacant lines for raises for IT and consultants rather than compensate Ms. DeBose for the additional volume of work she performed.  DIECKMANN stated that the circumstances did not warrant a bonus or additional compensation.  DIECKMANN unreasonably denied Ms. DeBose's request to explain how he arrived at such a determination and what were the circumstances to which he referred. Ms. DeBose's white counterparts were paid additional compensation and bonuses.

89.    On January 10, 2023, in an email to Regina Brown, Employee Relations/HR Specialist, in follow-up to a voice message to her, the Plaintiff informed Regina Brown of FARLEY's and DIECKMANN's racial animosity against her.  DeBose also documented AVENT's and PARKER's racial animosity, which fueled FARLEY and DIECKMANN.

90.    A September 19, 2023 email with Sherri Pavlik, Executive Assistant, Office of the General Counsel,  documents that Ms. DeBose's public record requests and professionally served subpoenas were not complied with.  The responses eventually provided in 2023 were deficient and prevented Ms. DeBose from obtaining evidence that would support her claims of the conspiracy and intent to discriminate, retaliate, and create a hostile retaliatory work environment among USFBOT, FLPOLY, GTLAW, MCCREA, PAGE, CARCAMO, et al., to force Ms. DeBose from her employment.  FLPOLY, USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO

concealed the discriminatory intent of the contract by refusing to provide all of the underlying documents    and emails through September 8, 2023, with FLPOLY producing emails only through the end of 2022 and USFBOT refusing to provide responses to discovery and public records requests.  These refusals were strategic to prevent Ms. DeBose from preserving her evidence for trial and providing exact or precise dates of discrimination, retaliation, or adverse employment actions to the FCHR and EEOC that were within the 180 days or 300 days of extension.  This interference with the EEOC/FCHR and the judicial process has been determined to be another form of retaliation.

91.    Ms. DeBose requested to extend her retirement date to 2026, submitting the form timely in July 2023.

92.    Ms. DeBose's request for an extension was denied.  The communication came from HR with DIECKMANN copied, signaling that he ultimately denied my continued employment.

93.    Though requested earlier, the communication was delayed, in retaliation, until August 2023, immediately before Ms. DeBose's termination date.

94.    By refusing to extend Ms. DeBose's retirement date, FLPOLY essentially terminated Ms. DeBose on account of her race-gender and age and retaliated against her because she engaged in protected activity.

95.     An email was sent to the Legislature about the denial of DROP Extension by Regina Siewert, Director of University Budgets at FLPOLY, with a statement that FLPOLY denied her, Regina Siewert, (Hispanic female) and denied Ms. DeBose (black female) the requested drop extension while approving a white male.

96.     Ms. DeBose was discriminated against due to her race (black/African American), Gender (female), and age (over 40) and retaliated against because of her protected activity with FCHR and EEOC, in violation of the Florida Civil Rights Act and Title VII of the Civil Rights Act of 1964, as amended.

<u>Use of State Funds to Enter a Per Se Discrimination / Retaliation Contract</u>

97.     The contract between FLPOLY and USF's representatives GTLAW and MCCREA, et al., was for the period from July 1, 2020 to June 30, 2021.

98.     In September 2020, the contract was amended concerning a Private Attorney Agreement with McCrea, Cayla Page, and GiGi Carcamo in May 2020.  These same attorneys, particularly MCCREA, were USFBOT's contracted legal representatives in Ms. DeBose's state and federal court cases since 2015.

99.     In August 2023, Ms. DeBose filed Title VII and FCRA complaints with the EEOC and FCHR respectively.

100.   Through discovery and production of all emails, the Plaintiff will show that FLPOLY continued to use the discriminatory/retaliatory practices recommended by USFBOT, GTLAW and MCCREA et al. against DeBose.  For example, by way of:

a.     Contracting to unlawfully oust Ms. DeBose from her position using state funds (in and after January 2020);

b.     Refusing to investigate the misuse of state funds concerning the nonrenewal of Workday Student and consultant reports from Plante Moran and The Tambellini Group by Randy Avent and Terry Parker and refusing to investigate the misuse of state funds in USFBOT-FLPOLY-GTLAW-MCCREA-PAGE-CARCAMO retaliation scheme against Ms. DeBose on the basis that Ms. DeBose is no longer a state employee—although she was a state employee during all relevant times from July 1, 2020 through June 30, 2021 to August 31, 2023;

c.     Refusing to investigate the circumstances surrounding the CrossVue contract.

d.     Refusing to investigate Ms. DeBose's grievance and multiple updates to it to show discrimination/retaliation.

e.     Accusing, defaming, alleging, inferring, or otherwise expressing that Ms. DeBose illegally engaged in the practice of law or unlawfully provided legal advice to other plaintiffs suing USF;

f.     Withholding nonexempt public records (in and after 2020) that USF has a non-delegable mandatory duty to provide;

g.      Compressing Ms. DeBose's salary and denying increases, salary adjustments, extra compensation, or bonuses while paying them to others.

h.      Retaliating against Ms. DeBose by refusing her request to extend her retirement date, depriving her of a benefit by the legislature to payout 4% versus 1%, additional healthcare benefits, and additional salary for up to three years.

i.      By refusing to extend Ms. DeBose's retirement date, FLPOLY essentially terminated Ms. DeBose on account of her race-gender and age and retaliated against her because she engaged in protected activity.

j.      Retaliating against Ms. DeBose's witness, Regina Siewert, by also denying her request to extend her DROP date because of her association with DeBose and her offer of testimony;

k.      Lying to a judge on behalf of FLPOLY that it was not properly served a subpoena duces tecum for records, when the statement is clearly unsupported by the factual record;

l.      Retaliating against Ms. DeBose by decreasing or criticizing Ms. DeBose's performance rating by using CrossVue's implementer access which exceeded Ms. DeBose's security administrator access in Workday, to sabotage or hijack her work;

m.      Reorganizing Ms. DeBose's department to report to the CIO Mike Dieckman, a harassing co-worker, instead of the VP of Administration and Finance (VPAF) and CFO as a demotion on account of her protected status(es) and protected activities;

n.      Stripping Ms. DeBose's department of staff/positions, actual budget, budget planning, space, contracts, and job duties/responsibilities in order to allege that Ms. DeBose is/was not comparable or similarly situated to the other department heads with an AVP title;

o.      Promoting Mike Dieckmann to a VPIT/CIO position to falsely allege or create a pretext justification that Ms. DeBose's demotion did not result in personal harm;

p.      Increasing the pay of  Ms. DeBose's witness, Regina Siewert, Budget Director, to a salary more comparable to Ms. DeBose to infer that Ms. DeBose and Regina Siewert are comparators or similarly situated in title or scope when in fact they were not during all relevant times from the start of Ms. DeBose's employment at FLPOLY to 2023.  While their breadth, depth, and scope of work has been different, Regina Siewert, a white Hispanic female, also filed a complaint against Penney Farley for discriminatory treatment in pay/compensation, for issuing her a written reprimand for unprofessionalism without cause, for seeking to unlawfully terminate her for following Penney

Farley's directive rather than be insubordinate, and for attempting to deny her FMLA.

q.      Denying Ms. DeBose's request to increase the pay of Lisette Brigham in order to retain her.  When Lisette Brigham, a white Hispanic female, resigned to accept another position, offering to pay her a salary that exceeded Ms. DeBose's salary and was higher or more comparable to the salaries of department heads Penney Farley and Mike Dieckmann, all the while depriving Ms. DeBose, who trained Lisette Brigham, of raises and promotion, and was better qualified.

r.      Attempting to replace Ms. DeBose with Alicia Maule while Ms. DeBose was still employed and on the job.  Offering to pay Alicia Maule, a white female, a salary that exceeded or was equivalent to Ms. DeBose's salary, all the while depriving Ms. DeBose, who trained Alicia Maule, raises and promotion, though Ms. DeBose was better qualified and had a Workday Project Management and other certifications.

s.      Showing hostility and animosity against Lisette Brigham, to chill her testimony as a potential witness, upon her departure from FLPOLY because she declined to stay at FLPOLY and participate in the retaliatory scheme against Ms. DeBose.

t.      Showing hostility and animosity against James Xin, Asian Male, to chill his testimony as a potential witness, by terminating his contingent worker employment.

u.      Conspiring to deprive Ms. DeBose of her right of self-representation and the business opportunity to practice law in the future by a false, frivolous allegation of vexatiousness and injunction.

v.      Using USFBOT employees and third party contractors to destroy evidence, destroy public records, and misuse the court system.

De Facto Termination

101.   GTLAW, MCCREA, PAGE, CARCAMO, and USFBOT continued to interfere in Ms. DeBose's employment after her termination from USF.

102.   GTLAW, MCCREA, PAGE, CARCAMO, and USFBOT conspired with FLPOLY and formed and executed an agreement with FLPOLY to do something unlawful or do something by unlawful means.

103.   Specifically, GTLAW, MCCREA, PAGE, CARCAMO, and USFBOT conspired with FLPOLY and formed and executed an agreement using State taxpayer funds with FLPOLY to discriminate, retaliate, and create a hostile retaliatory work environment to oust Ms. DeBose from her employment.

104.   Ms. DeBose is the only Black female department head and FLPOLY. GTLAW, MCCREA, PAGE, CARCAMO, and USFBOT made continuous calls for

Ms. DeBose's termination and/or forced early retirement.   USFBOT's action constitute a retaliatory adverse employment actions based upon Plaintiff's gender, and because she is both Black and female.

105.   GTLAW, MCCREA, PAGE, CARCAMO, and USFBOT called for termination of Ms. DeBose's employment at FLPOLY, making disparaging remarks to FLPOLY about Ms. DeBose both as a prospective employee and actual employee, in FLPOLY's prospective employer and current employer roles.

106.   USFBOT and FLPOLY subsequently agreed to do something unlawful or by unlawful means and retaliated against Ms. DeBose because of her race-gender, age, protected activity, and complaints against USFBOT and FLPOLY, violating Title VII and FCRA. Plaintiff's opposition to the discriminatory / retaliatory treatment she experienced based on race, gender, age, or other covered categories was protected.

107.   GTLAW, MCCREA, PAGE, CARCAMO, and USFBOT conspired with FLPOLY, AVENT, PARKER, FARLEY, and DIECKMANN carried out the agreement beyond the contract term, using disparaging remarks, and calls and emails to FLPOLY, to push for Ms. DeBose's termination.

108.   GTLAW, MCCREA, PAGE, CARCAMO, and USFBOT conspired with FLPOLY, AVENT, PARKER, FARLEY, and DIECKMANN carried out the agreement beyond the contract term, using disparaging remarks, and calls and emails

to FLPOLY, to push for Ms. DeBose's termination, by and through taking other adverse actions against her.

109.   Ms. DeBose had a reasonable basis in law and fact and a federally protected right to file her complaints against Defendants before the EEOC.

110.   Ms. DeBose filed a complaint of post-employment discrimination, retaliation, hostile work environment harassment, and business interference against USFBOT with the EEOC.

111.   Ms. DeBose filed a complaint of employment discrimination, per se discrimination, retaliation, per retaliation, hostile work environment harassment, per se hostile work environment harassment,  and breach of contract against FLPOLY with the EEOC.

112.   Although she had a history of positive performance evaluations, Ms. DeBose was terminated from her position on August 31, 2023.

113.   FLPOLY denied Ms. DeBose's timely, written request using the proper form and method to extend her retirement date.

114.   This resulted in the *de facto* termination of Ms. DeBose.

115.   This de facto termination of Ms. DeBose's employment was motivated in whole or in part by Ms. DeBose's race-gender and age and/or in retaliation for Ms. DeBose's protected activity.

<u>Satisfaction of Conditions Precedent</u>

116.   Plaintiff has met all conditions precedent and exhausted all administrative remedies prior to filing suit, including:

a. Filing a Charge of Post-employment Discrimination/Retaliation with the United States Equal Employment Opportunity Commission ("EEOC") via dual-filing same through the Florida Commission on Human Relations ("FCHR");

b. Receiving a Notices of Right to Sue from the EEOC within the appropriate amount of time for filing this action, **(see Exhibits A and B)**; and

c. Defendants USFBOT and FPUBOT have been given notice of tort action taken against it pursuant to the requirements of section 768.28(6)(a), Florida Statutes, **(see Exhibit C and D)**.

d. Obtaining evidence of the contracts by and between FLPOLY and USFBOT's representative on behalf of USFBOT and attaching them to this complaint, **(see Exhibit E**).

### III.  FACTUAL ALLEGATIONS

117.   Ms. DeBose is female; her race is Black; and she is over 40 years of age.

118.   DeBose is a former employee of USFBOT who has engaged in a protected activity and had "participation" in an EEOC process or "opposition" to discrimination and retaliation by USFBOT.

119.   DeBose was an employee of FLPOLY who has engaged in a protected activity and had "participation" in an EEOC process or "opposition" to discrimination and retaliation by FLPOLY, resulting from a contract FLPOLY entered with GTLAW, MCCREA, PAGE, CARCAMO on behalf of or to benefit USFBOT, with the intent to discriminate, retaliate, and/or create a hostile retaliatory work environment to drive Ms. DeBose away from her employment.

120.   Materially adverse actions have been taken by Ms. DeBose's former employer, USFBOT, during Ms. DeBose's employment at FLPOLY.

121.   Materially adverse actions were taken against Ms. DeBose by her employer, FLPOLY, in furtherance of the agreement among FLPOLY, USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO during Ms. DeBose's employment at FLPOLY.

122.   USFBOT, through GTLAW, MCCREA, PAGE, and CARCAMO, contracted with FLPOLY, then Ms. DeBose's present employer, to take materially adverse actions against Ms. DeBose.

123.   There is a close or very close causal connection between Ms. DeBose's protected activity and the materially adverse actions.

124.   The scope of USFBOT's actions extend beyond workplace-related or employment-related retaliatory acts and harm.

125.   In August 2022, Ms. DeBose made a public records request of her employer, FLPOLY, concerning USFBOT's continuing communications to FLPOLY about

her and its retaliatory interference with her employment.  The responsive records to Ms. DeBose's request is 2,725 records.

126.    FLPOLY previously provided responses to two public records requests from Ms. DeBose.

127.    However, FLPOLY refused to provide Ms. DeBose with the 2,725 public records.

128.    Through discovery, Plaintiff will show that USFBOT, GTLAW, PAGE, CARCAMO urged FLPOLY not to comply.  At USFBOT's urging, FLPOLY's General Counsel has asserted that Ms. DeBose already received "*public records with a value of $45,000.*"  The General Counsel sent Ms. DeBose an itemized invoice for $45,946.01 for the public records.  FLPOLY's General Counsel stated it was *all or nothing* and refused to provide any of the records unless Ms. DeBose paid the total charge.

129.    Because USFBOT has continued to conspire, discriminate, and retaliate against Ms. DeBose through disparaging remarks and calls for her termination by her employer FLPOLY, Ms. DeBose filed a complaint of post-employment discrimination against USFBOT with the EEOC.

130.    The emails will show that USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO contracted and conspired with FLPOLY to take unlawful adverse

employment actions against Ms. DeBose on account of Ms. DeBose's race-gender, age, and protected activity, including litigation against USFBOT as a serial offender.

131.   The emails will show that FLPOLY's President, Provost, and General Counsel (both Delulio and Fugett) agreed to help USFBOT by taking several adverse, discriminatory, retaliatory actions against Ms. DeBose on account of DeBose's race-gender, protected activity, and complaints against USFBOT and subsequently FLPOLY.

132.   As a result of the unlawful, adverse employments actions/omissions occurring under the undisclosed conspiratorial agreement among FLPOLY, USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO, Ms. DeBose filed complaints against USFBOT and FLPOLY for creating a hostile retaliatory work environment and conspiring with others to force her out of her job.  Through discovery, Plaintiff will show that FLPOLY followed the same retaliatory scheme that USFBOT deployed against DeBose.

133.   By way of example, USFBOT disparaged Ms. DeBose to FLPOLY and made false reports to government authorities, law enforcement, and court officials, on account of her race-gender, age, protected activity, and complaints against USFBOT.

134. USFBOT,  GTLAW,  MCCREA,  PAGE,  CARCAMO,  FARLEY, DIECKMANN, PARKER, AND AVENT conspired with FLPOLY to create a hostile, retaliatory work environment by using a software consultant (CrossCountry

/ CrossVue)  as USFBOT did with Ellucian, to frustrate Ms. DeBose's purpose, disrupt her work, and lower her estimation in the eyes of the FLPOLY community.

135.  USFBOT, GTLAW, MCCREA, PAGE, CARCAMO, FARLEY, DIECKMANN, PARKER, and AVENT conspired with FLPOLY to do as USFBOT did and threaten Ms. DeBose with reorganization, reassignment, and removal of her supervisory responsibilities, on account of her race-gender, age, protected activity, and complaints against USFBOT.

136.  USFBOT urged FLPOLY to fail to evaluate Ms. DeBose or give her a lower rating to degrade and marginalize Ms. DeBose as it did, on account of her race-gender, age, protected activity, and complaints against USFBOT.

137.  USFBOT, GTLAW, MCCREA, PAGE, CARCAMO, FARLEY, DIECKMANN, PARKER, and AVENT conspired with FLPOLY to suppress Ms. DeBose's pay and deny her the title/role of AVP as USFBOT did, on account of her race-gender, age, protected activity, and complaints against USFBOT.

138.  USFBOT, GTLAW, MCCREA, PAGE, CARCAMO, FARLEY, DIECKMANN, PARKER, and AVENT conspired with FLPOLY to do as USFBOT did and terminate Ms. DeBose's grievance process and block her access to otherwise available remedial internal mechanisms as it did, on account of her race-gender, age, protected activity, and complaints against USFBOT.

139.   USFBOT, GTLAW, MCCREA, PAGE, CARCAMO, FARLEY, DIECKMANN, PARKER, and AVENT conspired with FLPOLY to end Ms. DeBose's employment or force her early retirement to deter her from being able to economically or financially maintain her pending litigation against USFBOT, in retaliation and because of Ms. DeBose's race-gender, age, protected activity, and complaints against USFBOT.

140.   There is evidence of causation in the emails USFBOT and its employees, representatives, et al. exchanged with FLPOLY that supports Ms. DeBose's prima facie case, and well as evidence to refute the Defendants' defenses or justifications of nonretaliatory, pretextual explanations by USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO et al.

141.   There is prima facie evidence of per se discrimination and/or retaliation by the existence of the contracts and underlying documents that USFBOT and FLPOLY have failed to disclose or concealed from inspection/copying under Florida's public records laws and discovery.

## IV. CLAIMS

### COUNT I - against Defendant FLPOLY and USFBOT
### Gender Discrimination in Violation of TITLE VII.

Plaintiff incorporates Paragraphs 1-141 above as if fully set forth herein.

142.   Ms. DeBose is a female.

143.   At all times relevant hereto, Plaintiff performed her duties in a satisfactory, professional and highly competent manner at FLPOLY.

144.   Defendant USFBOT subjected Plaintiff to disparate treatment based on her gender (female) in violation of Title VII and/or FCRA, and because she is both Black and female.

145.   Defendant USFBOT's actions against Plaintiff, including but not limited to the continual disparaging comments to her employer, FLPOLY, over a 7-year time period.  Ms. DeBose is the only Black female department head and USFBOT made continuous calls for her termination and/or forced early retirement.  USFBOT's action constitute a retaliatory adverse employment actions based upon Plaintiff's gender, and because she is both Black and female.

146.   As a result of Defendant USFBOT's and FLPOLY's unlawful actions, Plaintiff has suffered and continues to suffer, past and future monetary losses, including damages in the form of lost wages and other benefits, damages to her career and to her professional and personal reputations, humiliation, emotional pain and suffering, mental anguish and stress, loss of enjoyment of life, and other non-pecuniary losses, and Plaintiff will likely continue to suffer these losses and impairments in the future.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Enter a judgment in favor of Plaintiff and against Defendants USFBOT and FLPOLY declaring that Defendants USFBOT and FLPOLY unlawfully engaged in post-employment discrimination against Plaintiff in violation of the FCRA;

B.  Issue a mandatory injunction: 1) Requiring Defendants USFBOT and FLPOLY to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that Defendants USFBOT and FLPOLY employees are not subjected to discrimination; and/or 2) Enjoin Defendant USFBOT particularly from further interfering with Plaintiff and any of her rights, privileges or benefits of employment or otherwise treating her differently on account of her gender and/or race; and/or

C.  Award Plaintiff all lost pay and benefits; and/or

D.  Award Plaintiff compensatory damages; and/or

E.  Retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein; and

F.  Grant such additional relief as this Court deems just and proper.

### COUNT II - against Defendant FLPOLY and USFBOT
### Race Discrimination in Violation of TITLE VII.

Plaintiff incorporates Paragraphs 1-142 above as if fully set forth herein.

147.  Ms. DeBose is a Black woman.

148.   At all times relevant hereto, Plaintiff performed her duties in a satisfactory, professional and highly competent manner at FLPOLY.

149.   Defendants USFBOT and FLPOLY subjected Plaintiff to disparate treatment based on her race (Black) in violation of Title VII and/or FCRA, and because she is both Black and female.

150.   Defendant USFBOT's and FLPOLY's actions against Plaintiff, including but not limited to the failure to promote her, compensate her, and the adverse actions taken against her to create a hostile retaliatory work environment to drive her away or oust her from her employment, constitute adverse employment actions based upon Plaintiff's gender, and because she is both Black and female.

151.   As a result of Defendant USFBOT's and FLPOLY's unlawful actions, Plaintiff has suffered and continues to suffer, past and future monetary losses, including damages in the form of lost wages and other benefits, damages to her career and to her professional and personal reputations, humiliation, emotional pain and suffering, mental anguish and stress, loss of enjoyment of life, and other non-pecuniary losses, and Plaintiff will likely continue to suffer these losses and impairments in the future.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a judgment in favor of Plaintiff and against Defendant USFBOT and FLPOLY declaring that Defendant USFBOT and FLPOLY unlawfully

engaged in post-employment discrimination against Plaintiff in violation of the FCRA;

B. Issue a mandatory injunction: 1) Requiring Defendants USFBOT and FLPOLY to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that Defendant USFBOT's and FLPOLY's employees are not subjected to discrimination; and/or 2) Enjoin Defendant USFBOT particularly from further interfering with Plaintiff and any of her rights, privileges or benefits of employment or otherwise treating her differently on account of her gender and/or race; and/or

C. Award Plaintiff all lost pay and benefits; and/or

D. Award Plaintiff compensatory damages; and/or

E. Retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein; and

G. Grant such additional relief as this Court deems just and proper.

### COUNT III – against Defendants USFBOT and FLPOLY
### Unlawful Retaliation in Violation of  TITLE VII.

Plaintiff incorporates Paragraphs 1-141 above as if fully set forth herein.

152.   Title VII forbids retaliation against an employee because she has opposed an employment practice made unlawful by Title VII, or because she engaged in EEOC activity, filed a charge or participated in any proceeding under FCRA/Title VII.

153.   This protection includes former employees.

154.  Plaintiff is a former employee of USFBOT.

155.  Plaintiff is now also a former employee of FLPOLY.

156.  Plaintiff engaged in protected activity at FLPOLY and filed a charge or participated in proceedings under FCRA and Title VII.

157.  Plaintiff engaged in protected activity against USFBOT for post-employment discrimination/retaliation, conspiring with others to unlawful interfere or use unlawful means to force her out of her employment at FLPOLY and filed a charge or participated in proceedings under  FCRA and Title VII.

158.  Plaintiff engaged in protected activity as described in the paragraphs above when she complained about gender discrimination and race discrimination, including but not limited to: filing a charge of post-employment discrimination, employment discrimination, and retaliation with the FCHR and EEOC and filing a discrimination lawsuit for damages and other relief in court(s) of competent jurisdiction.

159.  The actions of Defendant USFBOT, as fully set forth above, including but not limited to: calling for termination of Ms. DeBose's employment at FLPOLY, making disparaging remarks to a FLPOLY about Ms. DeBose both as a prospective employee and actual employee, in FLPOLY's prospective employer and current employer roles.  USFBOT and FLPOLY retaliated against Ms. DeBose because of her race-gender, age, protected activity, and complaints against USFBOT, violating

Title VII and FCRA. Plaintiff's opposition to the discriminatory / retaliatory treatment she experienced based on race, gender, age, or other covered categories was protected.

160.   The foregoing actions are the types that are reasonably likely to deter protected activity by Plaintiff and/or other employees, and therefore constitute retaliation in violation of Title VII and FCRA.

### COUNT IV – against Defendants USFBOT, GTLAW, MCCREA, PAGE, CARCAMO
### Tortious Interference with a Business Relationship

Plaintiff incorporates paragraphs 1-141 above as if fully set forth herein.

161.   In September 2015, Ms. DeBose was offered a temporary consulting job by FLPOLY to evaluate its Student System, Three Rivers CAMS, and subsequently hired to an OPS Business Analyst position to implement Workday ® Human Capital Management and Financials.

162.   In October 2016, Ms. DeBose was hired to a permanent position with benefits.

163.   There was a business relationship and/or potential for a relationship (advantageous or contractual) between Ms. DeBose and FLPOLY.

164.   The Defendants USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO knew about the relationship.

165.   USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO intentionally and unjustly interfered with or disrupted the relationship.

166.   The unlawful agreement entered into by and among FLPOLY, USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO under the common law of contract, is one that the court will not enforce or justify because the purpose of the agreement is to achieve an illegal end, and the illegal end resulted from performance of the contract itself. A contract formed with the intent to discriminate, retaliate, and create a hostile retaliatory work environment will not be enforced any more than a contract for murder.

167.   Ms. DeBose was damaged as a result of the Defendants' interference.

168.   From 2016 through 2022, USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO communicated with FLPOLY about or concerning Ms. DeBose, creating approximately 2,725 records, to "poison the well" and discourage FLPOLY from hiring, retaining, and advancing Ms. DeBose through retirement.

169.   Upon information and belief, the interference by USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO induced FLPOLY to create a hostile retaliatory work environment, discriminate, retaliate, and take adverse action against Ms. DeBose.

170.   USFBOT has a long history of gender and race discrimination and upon review, has over 60 federal and state civil rights cases against it.

171.   In its brief history as Florida's newest state university, FLPOLY has a similar history of discrimination in a shorter span of time, and like USF, has lost in court, requiring it to pay monetary damages.

172.   Upon information and belief, Defendant USFBOT and its representatives GTLAW, MCCREA, PAGE, and CARCAMO improperly, intentionally, and unjustifiably interfered by having an improper reason, as well as, utilizing improper methods.

173.   Upon information and belief, Defendant USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO contacted FLPOLY and induced its leadership and General Counsel not to provide the public records pursuant to Ms. DeBose's request and/or comply with a subpoena issued by a federal court to obtain those records.  USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO seek to deprive, delete, and destroy evidence that Ms. DeBose needs to prove her case at trial by conspiring with FLPOLY to refuse to provide public records and discovery no matter the consequence because of USFBOT's, GTLAW's, MCCREA's, et al., backdoor access and influence peddling with the court system.

174.   USFBOT, FLPOLY, GTLAW, MCCREA, PAGE, and CARCAMO sought to deprive Ms. DeBose of her prospects for other professional jobs in higher education in hopes of humiliating and degrading DeBose.

175.   The interference by USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO with Ms. DeBose's employment at FLPOLY has damaged the Plaintiff.

176.   Upon information and belief, Defendants USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO persisted in its course of action, despite the knowledge that its conduct would result in damage to Plaintiff, or at least was highly likely to result in damage to Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a judgment in favor of Plaintiff and against Defendant USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO declaring that Defendant USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO unlawfully interfered with Plaintiff's business relationship with FLPOLY; and/or

B. Issue a mandatory injunction: 1) Requiring Defendant USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that individuals such as Plaintiff are not subjected to unlawful interference; and/or 2) Enjoining Defendant USFBOT, GTLAW, MCCREA, PAGE, and CARCAMO from actions designed to deny Plaintiff any of her rights, privileges or benefits of employment or otherwise treating her differently on account of her protected activity; and/or 3) Enjoining Defendant USFBOT,

GTLAW, MCCREA, PAGE, and CARCAMO from benefiting from any contractual relationship that may have arisen out of the interference; and/or

C. Award Plaintiff all economic losses resulting from the unlawful interference; and/or

D. Award Plaintiff damages for mental distress; and/or

E.  Retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein; and

F. Grant such additional relief as this Court deems just and proper.

## COUNT V – against ALL DEFENDANTS
### Civil Conspiracy

Plaintiff incorporates by reference the preceding allegations 1-141 and 161-176 as if set forth herein at length.

177.  A conspiracy existed between USFBOT, GTLAW, MCCREA, PAGE, CARCAMO, FLPOLY, FARLEY, DIECKMANN, PARKER, and AVENT.

178.  FLPOLY, USFBOT, GTLAW, MCCREA, PAGE,  CARCAMO, FARLEY, DIECKMANN, PARKER, and AVENT agreed to do an unlawful act or to do a lawful act by unlawful means.

179.  FLPOLY, USFBOT, GTLAW, MCCREA, PAGE, CARCAMO, FARLEY, DIECKMANN, PARKER, and AVENT agreed to the doing of some overt act in pursuance of their respective conspiratorial agreement.

180.   FLPOLY, USFBOT, GTLAW, MCCREA, PAGE, CARCAMO, FARLEY, DIECKMANN, PARKER, and AVENT caused damage to plaintiff as a result of the acts performed pursuant to the agreement.

181.   Defendants USFBOT, GTLAW, MCCREA, and FPUBOT et al., participated in a common design or scheme, and coordinated or acted in concert together to accomplish an unlawful purpose, to discriminate, retaliate, and interfere in Ms. DeBose's employment, pay, compensation, and benefits, in violation of Title VII, FCRA, and Florida Common Law.

182.   Defendants USFBOT, GTLAW, MCCREA, and FPUBOT et al., agreed by way of a contract to participate in a common design or scheme and coordinated or acted in concert together to accomplish an unlawful purpose, to discriminate, retaliate, and interfere in Ms. DeBose's employment, pay, compensation, and benefits, in violation of Title VII, FCRA, and Florida Common Law.

183.   Defendants USFBOT, GTLAW, MCCREA, and FPUBOT et al., participated in a common design or scheme, and coordinated or acted in concert together to accomplish a lawful purpose by unlawful means, to procure a favorable judgment over Ms. DeBose by committing fraud, making fraudulent misrepresentations, committing fraudulent concealment/ nondisclosure, acting in willful disregard or contempt of court, and violating the Plaintiff's procedural, constitutional, and statutory rights.

184.   The Defendants set this scheme in motion and USFBOT, GTLAW, MCCREA, and FPUBOT et al., committed overt acts in furtherance of the conspiracy on behalf of USFBOT to discharge or otherwise to interfere, discriminate and/or retaliate against Ms. DeBose with respect to compensation, terms, conditions, or privileges of employment, because of her race, color, or age.

185.   It was unlawful of USFBOT, GTLAW, and MCCREA et al., to cause or attempt to cause FPUBOT to discriminate and/or retaliate against Ms. DeBose in violation Title VII or the FCRA.

186.   Because of the conspiratorial scheme by USFBOT, GTLAW, MCCREA, and FPUBOT et al. to discriminate, retaliate, and/or interfere, Ms. DeBose may be entitled to damages from USFBOT.

WHEREFORE, Plaintiff demands judgment against the Defendants USFBOT and FPUBOT.

## COUNT VI - against Defendant USFBOT and FLPOLY
### Age Discrimination in Violation of FCRA.

Plaintiff incorporates Paragraphs 1-126 above as if fully set forth herein.

187.   Ms. DeBose is over 40 years of age.

188.   At all times relevant hereto, Plaintiff performed her duties in a satisfactory, professional and highly competent manner at FLPOLY.

189.    Defendant USFBOT subjected Plaintiff to disparate treatment based on her age, in violation of Title VII and/or FCRA, because Ms. DeBose is over 40.

190.   Ms. DeBose is nearing retirement.

191.   Defendant USFBOT's and FLPOLY's actions against Plaintiff, including but not limited to defunding her department, requiring her to work alone, lying to her about filling vacancies, and refusing to compensate her under conditions not imposed on other employees.

192.   As a result of Defendant USFBOT's unlawful actions, Plaintiff has suffered and continues to suffer, past and future monetary losses, including damages in the form of lost wages and other benefits, damages to her career and to her professional and personal reputations, humiliation, emotional pain and suffering, mental anguish and stress, loss of enjoyment of life, and other non-pecuniary losses, and Plaintiff will likely continue to suffer these losses and impairments in the future.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a judgment in favor of Plaintiff and against Defendant USFBOT declaring that Defendant USFBOT unlawfully engaged in post-employment discrimination against Plaintiff in violation of FCRA;

B. Issue a mandatory injunction: 1) Requiring Defendant USFBOT to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that Defendant USFBOT's employees are not subjected to discrimination; and/or 2) Enjoin Defendant USFBOT from further interfering with Plaintiff and any of her rights, privileges or benefits of

employment or otherwise treating her differently on account of her age; and/or

C.  Award Plaintiff all lost pay and benefits; and/or

D.  Award Plaintiff compensatory damages; and/or

E.  Retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein; and

F.  Grant such additional relief as this Court deems just and proper.

**COUNT VII – against Defendant USFBOT, FLPOLY,
GTLAW, MCCREA, PAGE, CARCAMO,
FARLEY DIECKMANN,  PARKER, and AVENT
Hostile Work Environment Harassment**

Plaintiff re-alleges paragraphs 1-126 of this Complaint as if fully set forth under this count.

193.   Ms. DeBose, a black female over the age of 40 years belongs to a protected group or classification.

194.  Ms. DeBose was subject to unwelcome harassment at FLPOLY by DIECKMANN and FARLEY, her peers, and also by her managers or University cabinet members AVENT, PARKER, and later DIECKMANN.

195.  The harassment was because of Ms. DeBose's race-gender and age or being a member of a protected classification.

196.   The harassment was sufficiently severe or pervasive to alter the terms and conditions of Ms. DeBose's employment and created a discriminatorily abusive working environment.

197.   The Defendants USFBOT, GTLAW, and FLPOLY were responsible for such environment and are vicariously liable for its employees, agents, and contractors. FLPOLY also has direct liability for the acts/omissions of its employees, agents, and assigns. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a judgment in favor of Plaintiff and against Defendants USFBOT, FPOLY, and GTLAW declaring that Defendants unlawfully engaged in hostile work environment harassment against Plaintiff in violation of the FCRA;

B. Issue a mandatory injunction: 1) Requiring Defendants USFBOT, FLPOLY, and GTLAW to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that Defendants' employees are not subjected to discrimination; and/or 2) Enjoin Defendant USFBOT particularly from further interfering with Plaintiff and any of her rights, privileges or benefits of employment or otherwise treating her differently on account of her gender and/or race; and/or

C. Award Plaintiff all lost pay and benefits; and/or

D.  Award Plaintiff compensatory damages; and/or

E.  Retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein; and

F.  Grant such additional relief as this Court deems just and proper.

### COUNT VIII – against Defendant FLPOLY, USFBOT, GTLAW, MCCREA, PAGE, CARCAMO, DIECKMANN, FARLEY
### Coworker Hostile Work Environment Harassment

Plaintiff re-alleges paragraphs 1-110 of this Complaint as if fully set forth under this count.

198.   Ms. DeBose, a black female over the age of 40 years belongs to a protected group or classification.

199.  Ms. DeBose was subject to unwelcome harassment at FLPOLY by DIECKMANN and FARLEY, her peers or fellow coworkers.

200.  The harassment was because of Ms. DeBose's race-gender and age or being a member of a protected classification.

201.  The harassment was sufficiently severe or pervasive to alter the terms and conditions of Ms. DeBose's employment and created a discriminatorily abusive working environment.

202.  The Defendants USFBOT and FLPOLY were responsible for such environment and are directly liable.

203.   FLPOLY's leadership, AVENT and PARKER, had actual knowledge of FARLEY'S and DIECKMANN's conduct and that it was sufficiently severe and pervasive.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a judgment in favor of Plaintiff and against Defendants USFBOT and FLPOLY declaring that Defendants USFBOT and FLPOLY unlawfully engaged in co-worker hostile work environment harassment against Plaintiff in violation of the FCRA;

B. Issue a mandatory injunction: 1) Requiring Defendants USFBOT and FLPOLY to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that Defendants' employees are not subjected to discrimination; and/or 2) Enjoin Defendant USFBOT particularly from further interfering with Plaintiff and any of her rights, privileges or benefits of employment or otherwise treating her differently on account of her gender and/or race; and/or

C. Award Plaintiff all lost pay and benefits; and/or

D. Award Plaintiff compensatory damages; and/or

E. Retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein; and

F. Grant such additional relief as this Court deems just and proper.

## COUNT IX – against ALL DEFENDANTS
### Intentional Infliction of Emotional Distress

Plaintiff re-alleges paragraphs 1-188 of this Complaint as if fully set forth under this count.

204. The Defendants engaged in intentional or reckless conduct.

205. The Defendants' conduct was outrageous.

206. The Defendants' conduct caused Ms. DeBose emotional distress.

207. Ms. DeBose's emotional stress was severe.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a judgment in favor of Plaintiff and against Defendants FLPOLY, USFBOT, GTLAW, MCCREA, PAGE, CARCAMO, FARLEY, DIECKMANN, PARKER, and AVENT.

B. Award Plaintiff a total of $350,000.00 or $50,000.00 from each defendant in emotional distress damages.


## COUNT X
### RACE DISCRIMINATION AND RETALIATION
### IN VIOLATION OF § 1981
### (Hostile Work Environment)
### (FLPOLY, GTLAW, USFBOT, MCCREA, PAGE, CARCAMO, AVENT, PARKER, DIECKMANN, and FARLEY)

Plaintiff alleges and incorporate each of the factual allegations stated in paragraphs 1-126 and 132-145 above.

208.   42 U.S.C. § 1981 guarantees that all persons shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race and national origin.

209.   Section 1981 also prohibits retaliation against individuals who make complaints about racial discrimination in the creation and/or enforcement of contracts, including contracts for terms and conditions of employment.

210.   The right to be free from racial discrimination in employment and retaliation for assertion of one's civil rights were both clear and well-established rights, known to each of the Defendants in this action throughout the time period of the allegations of this Complaint.

211.   Ms. DeBose regularly faced offensive comments and adverse treatment on the basis of her race, from the Defendants. The conduct was so severe and pervasive that it created a working environment so hostile that it negatively changed the terms and conditions of her employment with her employers as alleged above.

212.   Supervisory personnel, including, but not limited to, Defendants PARKER and AVENT were aware of the racial harassment against Ms. DeBose and either failed to remedy the harassment or actively participated in creating a hostile work environment.

213.   The acts in retaliation for Ms. DeBose's complaints against the racially hostile environment are further detailed above in paragraphs 24, 27, 33, 43, 48, 71, 90, 104, 117, 119, 135, 151, 178-188, and 196-198.

214.   The behavior by the above listed Defendants occurred when the Defendants were acting within the scope of their employment.

215.   Defendants' discriminatory practices have caused Ms. DeBose harm, including severe emotional distress, medical bills, and lost wages.

216.   Accordingly, Defendants have violated Ms. DeBose's rights as protected by 42 U.S.C. § 1981.

**COUNT XI**
**RACE DISCRIMINATION AND RETALIATION**
**IN VIOLATION OF § 1981**
**(Termination)**
**(FLPOLY, GTLAW, USFBOT, MCCREA, PAGE, CARCAMO,**
**AVENT, PARKER, DIECKMANN, and FARLEY)**

Plaintiff alleges and incorporate each of the factual allegations stated in paragraphs 1-126,  132-145, 178-188, and 196-198 above.

217.   42 U.S.C. § 1981 guarantees that all persons shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race and national origin.

218.   Section 1981 also prohibits retaliation against individuals who make complaints about racial discrimination in the creation and/or enforcement of contracts, including contracts for terms and conditions of employment.

219.   The right to be free from racial discrimination in employment and retaliation for assertion of one's civil rights were both clear and well-established rights, known to each of the Defendants in this action throughout the time period of the allegations of this Complaint.

220.   Ms. DeBose had a reasonable basis in law and fact and a federally protected right to file her complaints against Defendants before the EEOC.

221.   Although she had a history of positive performance evaluations, Ms. DeBose was terminated from her position on August 31, 2023 and not allow to extend her retirement date. This termination of Ms. DeBose's employment was motivated in whole or in part by Ms. DeBose's race-gender and age and/or in retaliation for Ms. DeBose's protected activity.

222.   Despite FLPOLY's success during Ms. DeBose's tenure, Ms. DeBose was prevented from extending her employment by Defendants. This termination was motivated in whole or in part by Ms. DeBose's race and/or in retaliation and/or was an act of retaliation for Ms. DeBose's protected activity.

223.   Retaliation resulting in Ms. DeBose's termination is further detailed above in paragraphs 1-126 and 132-145.

224.   The behavior by the above listed Defendants occurred when the Defendants were acting within the scope of their employment.

225.   Defendants' discriminatory practices have caused Ms. DeBose harm, including severe emotional distress, medical bills, and lost wages.

226.   Accordingly, Defendants have violated Ms. DeBose's rights as protected by 42 U.S.C. § 1981.

## COUNT XII
## RACE DISCRIMINATION AND RETALIATION
## IN VIOLATION OF § 1981
### (Interference with Duties)
### (FLPOLY, GTLAW, USFBOT, MCCREA, PAGE, CARCAMO, AVENT, PARKER, DIECKMANN, and FARLEY)

Ms. DeBose alleges and incorporates each of the factual allegations stated in paragraphs 1 through 141 above.

227.   42 U.S.C. § 1981 guarantees that all shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race and national origin.

228.   Section 1981 also prohibits retaliation against individuals who make complaints about racial discrimination in the creation and/or enforcement of contracts, including contracts for terms and conditions of employment.

229.   The right to be free from racial discrimination in employment and retaliation for assertion of one's civil rights were both clear and well-established rights, known to each of the Defendants in this action throughout the time period of the allegations of this Complaint.

230.   Ms. DeBose had a reasonable basis in law and fact and a federally protected right to file her complaints against Defendants before the EEOC.

231.   Managing the Workday environment and change migration process for Human Capital Management and Financials was a vital part of Ms. DeBose's duties.

232.   After learning that Ms. DeBose had filed a grievance against Defendants FARLEY and DIECKMANN prohibited Ms. DeBose from carrying out the full scope, depth, and breadth of her work and constantly attempted to sabotage Ms. DeBose's work or set her up for failure.

233.   Farley constantly made false complaints. Avent, Parker, and Dieckmann refused to investigate Farley's bogus complaints but took the extraordinary step of investigating Ms. DeBose instead.  Dieckmann accused Ms. DeBose of lying about his and Farley's harassment and hostility in her complaints to Human Relations / Human Resources at FLPOLY and set out to restrict Ms. DeBose's interactions with other employees in meetings, committees, workgroups, and teams.

234.   This action directly interfered with Plaintiff's ability to execute her job duties.

235.   DIECKMANN'S and FARLEY'S interference was very soon after they were made aware of Ms. DeBose's complaints of coworker race-gender hostile work environment harassment against her.

236.   DIECKMANN's and FARLEY'S interference was motivated in whole or in part by Ms. DeBose's race and/or was an act of retaliation for Ms. DeBose's protected activity.

237.   Retaliation for Ms. DeBose's complaints resulting in Defendant's interference with Plaintiff's duties is further detailed above in paragraphs 1-126 and 132-145.

238.   Defendant's discriminatory practices have caused Ms. DeBose harm, including severe emotional distress, medical bills, and lost wages.

239.   Accordingly, Defendants have violated Ms. DeBose's rights as protected by 42 U.S.C. § 1981.

**COUNT XIII**
**RACE DISCRIMINATION AND RETALIATION**
**IN VIOLATION OF § 1983**
**FOURTEENTH AMENDMENT EQUAL PROTECTION**
**(Hostile Work Environment)**
**(FLPOLY, GTLAW, USFBOT, MCCREA, PAGE, CARCAMO,**
**AVENT, PARKER, DIECKMANN, and FARLEY)**

Ms. DeBose alleges and incorporates each of the factual allegations stated in paragraphs 1-126, 178-188, and 196-198 above.

240.   42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

241.   All Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

242.   Defendants created a hostile work environment because of Ms. DeBose's race as detailed above in paragraphs 24, 27, 33, 43, 48, 71, 90, 104, 117, 119, 135, 151, 178-188, and 196-198.

243.   Defendant PARKER AND AVENT failed to intervene to stop the racially hostile work environment.

244.   Ms. DeBose had a good faith and reasonable basis to complain about race discrimination, constituting protected activity under 42 U.S.C. § 1983.

245.   Moreover, the hostile work environment was caused by or custom of USFBOT and FLPOLY, previously USF Lakeland, by engaging in systemic or institutional racism and retaliating against terminated employees by taking away gainful employment opportunities by "poisoning the well," giving poor references.

246.   At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the State of Florida and within the meaning of 42 U.S.C. § 1983.

247.   The behavior by the above listed Defendants occurred when the Defendants were acting within the scope of their employment and used incidents and tools of their employment.

248.   Defendants' discriminatory practices have caused Ms. DeBose severe emotional distress and ultimately led to her termination.

249.   Accordingly, Defendants have violated Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution.

**COUNT XIV**
**RACE DISCRIMINATION AND RETALIATION**
**IN VIOLATION OF § 1983**
**FOURTEENTH AMENDMENT EQUAL PROTECTION**
**(Disparate Treatment: Benefits and Pay)**
**(FLPOLY, GTLAW, USFBOT, MCCREA, PAGE, CARCAMO,**
**AVENT, PARKER, DIECKMANN, and FARLEY)**

Plaintiff alleges and incorporate each of the factual allegations stated in paragraphs 1-126 and 132-136 above.

250.   42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

251.   All Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

252.   USFBOT and FLPOLY are public or state universities. USFBOT and FLPOLY are liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the municipality caused the violations of Plaintiff's constitutional rights, and/or because state university / state agency officials with final policymaking authority violated Plaintiff's constitutional rights. See *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

253.   USF is an instrumentality of the USFBOT, State University System, and/or State of Florida.

254.   The USFBOT is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the department caused the violations of Plaintiff's constitutional rights, and/or because state university or state agency officials with final policymaking authority violated Plaintiff's constitutional rights.

255.   Plaintiff had a good faith and reasonable basis to complain about race discrimination or to assist the other Plaintiffs in complaints of race discrimination, constituting protected activity under 42 U.S.C. § 1983.

256.   Ms. DeBose is black / African American and part of a protected class under the Equal Protection Clause.

257.   At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the State of Florida within the meaning of 42 U.S.C. § 1983.

258.   Defendants' behavior occurred when acting within the scope of their employment and used incidents and tools of their employment.

259.   As University President, Defendant AVENT was the FLPOLY state agency official responsible for determining the benefits and salaries of the FLPOLY state university, including the Plaintiff's benefits and salaries.

260.   Despite better than satisfactory job performance, Ms. DeBose received lower pay and fewer benefits than similarly situated White counterparts who held the same

position as department head.  Unlike White department heads, Ms. DeBose did not receive regular salary increases.

261.  As for Ms. DeBose, she received lower pay than similarly situated White department heads, and Ms. DeBose's requests to raise her salary were denied, despite similarly situated White department heads receiving raises. Subsequently, as a result of engaging in statutorily protected activity, they also experienced retaliation with regards to pay and benefits, resulting in demotion and still more disparate benefits and pay, as detailed above in paragraphs 1-126.

262.  Defendants' disparate treatment and discriminatory practices have caused Ms. DeBose severe emotional distress and ultimately led to Ms. DeBose's termination.

263.  Accordingly, Defendants have violated Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution.

**COUNT XV**
**RACE DISCRIMINATION AND RETALIATION**
**IN VIOLATION OF § 1983**
**FOURTEENTH AMENDMENT EQUAL PROTECTION**
**(Termination)**
**(FLPOLY, GTLAW, USFBOT, MCCREA, PAGE, CARCAMO,**
**AVENT, PARKER, DIECKMANN, and FARLEY)**

Ms. DeBose alleges and incorporates each of the factual allegations stated in paragraphs 1 through 141 above.

264.   42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

265.   Ms. DeBose is black / African Americans and part of a protected class under the Equal Protection Clause.

266.   Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

267.   USF is an instrumentality of the USFBOT, State University System, and/or State of Florida.

268.   FLPOLY is an instrumentality of the FPUBOT, State University System, and/or State of Florida.

269.   USFBOT and FLPOLY are state universities or arms of state government and are liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the municipality caused the violations of Plaintiff's constitutional rights, and/or because state university or state agency officials with final policymaking authority violated Plaintiff's constitutional rights. See *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

270.   USF is an instrumentality of the USFBOT, State University System, and/or State of Florida.

271.   FLPOLY is an instrumentality of the FPUBOT, State University System, and/or State of Florida.

272.   USFBOT and FPUBOT are liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the department caused the violations of Plaintiff's constitutional rights, and/or because state university or state agency officials with final policymaking authority violated Plaintiff's constitutional rights.

273.   Although he had a history of positive performance evaluations, Ms. DeBose was terminated from her position on August 31, 2023 and not allowed to extend her retirement date as legislated or as she requested. This termination was motivated in whole or in part by Ms. DeBose's race and/or in retaliation for Ms. DeBose's protected activity.

274.   Despite FLPOLY's success with the Workday System during Ms. DeBose's tenure and the success of Enterprise Systems, Ms. DeBose's department, Ms. DeBose was effectively terminated from her employment by Defendants and the FPUBOT on August 31, 2023. This termination was motivated in whole or in part by Ms. DeBose's race and/or in retaliation and/or was an act of retaliation for Ms. DeBose's protected activity.

275.   Retaliation resulting in Ms. DeBose's termination is further detailed above in paragraphs 1-126 and 132-145.

276.   Defendants' discriminatory practices have caused Ms. DeBose harm, including severe emotional distress, medical bills, and lost wages.

277. Accordingly, Defendants have violated Ms. DeBose's rights as protected by 42 U.S.C. § 1983.

## COUNT XVI
## DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1983
## FIRST AMENDMENT FREE SPEECH AND RIGHT TO PETITION
## (FLPOLY, GTLAW, USFBOT, MCCREA, PAGE, CARCAMO, AVENT, PARKER, DIECKMANN, and FARLEY)

Ms. DeBose alleges and incorporates each of the factual allegations stated in paragraphs 1 through 141 above.

278. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

279. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

280. USF is an instrumentality of the USFBOT, State University System, and/or State of Florida.

281. FLPOLY is an instrumentality of the FPUBOT, State University System, and/or State of Florida.

282. USFBOT and FPUBOT are liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the municipality caused the violations of Plaintiff's constitutional rights, and/or because State university or agency officials with final policymaking authority violated Plaintiff's constitutional rights. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

283.   USF is an instrumentality of the USFBOT, State University System, and/or State of Florida.

284.   FLPOLY is an instrumentality of the FPUBOT, State University System, and/or State of Florida.

285.   USFBOT and FPUBOT are liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the department caused the violations of Plaintiff's constitutional rights, and/or because state university  or state agency officials with final policymaking authority violated Plaintiff's constitutional rights.

286.   Ms. DeBose engaged in protected activity when she exercised her First

287.   Amendment rights to free speech on matters of public concern to the community and to petition the government for grievances as detailed in paragraphs 102 and 103.

288.   The above action was not part of Ms. DeBose's official duties or within the scope of her employment as a Department Head or Senior Director.

289.   In taking the above action, Ms. DeBose spoke out as a citizen of the community.

290.   The behavior by the above listed Defendants occurred when the Defendants were acting with the scope of their employment.

291.   Defendants' discriminatory practices have caused Ms. DeBose harm, including severe emotional distress, and lost wages.

292.   In their creation of a hostile work environment, denial of equal pay and benefits, and in the termination of Ms. DeBose, Defendants denied Ms. DeBose her constitutional right to free speech, and retaliated against her for the exercise of her right, as guaranteed by the First Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

**COUNT XVII**
**CIVIL CONSPIRACY IN VIOLATION OF § 1985**
**(FLPOLY, GTLAW, USFBOT, MCCREA, PAGE, CARCAMO,**
**AVENT, PARKER, DIECKMANN, and FARLEY)**

Ms. DeBose alleges and incorporates each of the factual allegations stated in paragraphs 1-141 and 177-186 above.

293.   Defendants FLPOLY, GTLAW, USFBOT, MCCREA, PAGE, CARCAMO, AVENT, PARKER, DIECKMANN, and FARLEY engaged in a conspiracy and unlawful agreement to deprive Ms. DeBose of her constitutional and statutorily protected right to work in an environment free of racial harassment and her right not to suffer adverse employment actions on the basis of her race.

294.   This conspiracy was motivated by animus with respect to Ms. DeBose's race.

295.   The purpose of the conspiracy was to discredit Ms. DeBose's valid complaints of racial discrimination and retaliation in violation of her federal civil rights.

296.   The purpose of the conspiracy was also to obtain Ms. DeBose's termination from FLPOLY on a pretextual basis, knowing that the true motivation was racial discrimination in violation of federal law.

297.   The overt acts of racial discrimination and intimidation in furtherance of the conspiracy undertaken by all three members of the conspiracy are further detailed in paragraphs 1-141 and 161-176 above.

298.   The purpose and effect of the conspiracy was part of the same effort by all Defendants' effort to deprive Ms. DeBose of the substantive rights provided by the Fourteenth Amendment to the U.S. Constitution and by 42 U.S.C. § 1981 and § 1983 as alleged above.

299.   Accordingly, Defendants have violated Ms. DeBose's rights as protected by 42 U.S.C. § 1985.

## COUNT XVII
## BREACH OF CONTRACT
## (FLPOLY)

Ms. DeBose alleges and incorporates each of the factual allegations stated in paragraphs 1-141.

300.   On August 31, 2024, Plaintiff was performing her job as Department Head or Senior Director of Enterprise Systems under an annual employment contract that was set to legislatively renew for three (3) more years, upon execution of an extension form to extend her DROP date by Ms. DeBose to extend her retirement date.

301.   Ms. DeBose completed the form weeks or more in advance of her retirement date and timely submitted it to FLPOLY Human Resources.

302.   The form was anticipated the legislature to result in automatic extension as a matter of right.

303.   On or around August 29, 2023, prior to Ms. DeBose's retirement date from her position as Department Head or Senior Director of Enterprise Systems, FLPOLY's Human Resources AVP and DIECKMANN denied Ms. DeBose's form extending her retirement date, effectively terminating her employment, and forcing her to submit her DROP termination form or lose also retirement income and benefits.

304.   FLPOLY's de facto termination was close in time or temporal proximity to Ms. DeBose's protected activity with FLPOLY's Employee Relations / Human Resources inquiring about the extension and protected activity with FCHR and the EEOC.

305.   Upon information and belief, on and before August 31, 2023, before the end of Ms. DeBose's annual employment contract, and before the end of the automatic legislative extension, FLPOLY took action to terminate Ms. DeBose's employment, violating the active employment contract and under the legislation.

306.   At all times material hereto, Plaintiff has performed her obligations under the annual employment agreement and legislative retirement date extension.

307.   The breaches of contract by Defendant resulted in injury to the Plaintiff.

308.   As a result, Plaintiff seeks all amounts owed by Defendant pursuant to the agreements. Further, the Plaintiff seeks all actual, consequential, and incidental damages that have resulted from the Defendant's breaches plus costs, expenses, and pre- and post- judgment interest as allowed by law.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

A.   Enter a judgment in favor of Plaintiff and against the Defendant FLPOLY declaring that the Defendant unlawfully breached the contract; and/or

B.   Specific performance of the contract; and/or

C.   Reinstate Plaintiff to employment with Defendant FLPOLY, or, in the alternative, award Plaintiff front pay; and/or

D.   Award Plaintiff all lost pay and benefits pursuant to the contract; and/or

E.   Award Plaintiff compensatory damages; and/or

F.   Award Plaintiff all actual damages; and/or

G.   Award Plaintiff consequential and incidental damages; and/or

H.   Award Plaintiff her costs, expenses and any applicable attorneys' fees;

J.   Retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein; and/or

K.   Grant such additional relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant relief against the Defendants as follows:

1. Enter judgment on their behalf against Defendants on all counts;

2. Declare pursuant to pursuant to 28 U.S.C. § 2201-2202 that the practices described in this Complaint exist and that they are unlawful;

3. Issue a permanent injunction that (i) prohibits Defendants, their officers, agents, employees, and successors from engaging in the discriminatory employment practices complained of herein; (ii) returns Plaintiff to the employment position she would have held but for Defendants' wrongful conduct; and (iii) imposes a prohibition of similar conduct in the future;

4. Require three-year monitoring of all employment activity by Defendants USFBOT and FLPOLY to prevent any further racial discrimination in employment, including the hiring and training of new and current employees;

5. Award Plaintiff front pay and back pay with interest and other job benefits, including the value of health benefits, sufficient to redress all of the economic harms she has suffered;

6. Award Plaintiff compensatory damages in an amount to be proven at trial

sufficient to redress the harms that they have suffered, including physical and emotional distress, humiliation, embarrassment, loss of income, loss of pay, and mental anguish;

7. Award Plaintiff appropriate punitive damages in an amount to be proven at trial that would punish Defendants for their knowing, intentional, willful, and reckless disregard of clearly established federal constitutional and statutory rights as alleged herein and enter any and all injunctive decrees and relief necessary to effectively prevent all Defendants from engaging in similar unlawful racial discrimination in the future;

8. Award Plaintiff reasonable attorneys' fees, if applicable, under 42 U.S.C § 1988 and all taxable costs of this action;

9. Award such other and further relief in any form that this Court deems just and proper under the facts and circumstances as proved at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues triable by a jury

## RESERVATION OF RIGHTS

Plaintiff reserves her right to further amend this Complaint to include counts upon completion of her investigation and discovery, to assert any additional claims for relief against the Defendants or other parties, including the State of Florida and

CrossCountry/CrossVue Consulting, as may be warranted under the circumstances and as allowed by law.

Respectfully submitted this **25th** day of March, 2024,

/s/ Angela DeBose

Angela DeBose, Plaintiff
1107 W. Kirby Street
Tampa, FL 33604
813-932-6959
awdebose@aol.com